[Civ. No. 56699. Second Dist., Div. Three. May 13, 1980.]

BEVERLEE A. MYERS, as Director, etc., Plaintiff and Appellant, v. ASTORIA CONVALESCENT HOSPITAL, Defendant and Respondent.

[And two other cases.]*

---

*Myers v. York-Mesa Corporation (Civ. No. 56866); Myers v. G.M.P.H. Corporation (Civ. No. 56937).

COUNSEL

George Deukmejian, Attorney General, Anne S. Pressman and Karen L. Fried, Deputy Attorneys General, for Plaintiff and Appellant.

Weissburg & Aronson and Jay N. Hartz for Defendants and Respondents.

OPINION

COBEY, Acting P. J.—The above-named plaintiff, Director of the State Department of Health Services, appeals from three judgments on the pleadings in favor of the three above-named defendant convalescent hospitals. Each judgment rests upon the ground that the penalty setup

in the Long-Term Care, Health, Safety, and Security Act of 1973 (hereafter Act) (Health & Saf. Code, § 1417 et seq.)[1] deprived each defendant of constitutional due process of law. We have consolidated these three appeals since they raise the same legal issues. Each judgment terminated an enforcement action for civil penalties under the Act, brought by the Attorney General.

We intend to reverse these judgments for reasons that follow.

## FACTS

### A. *The Act*

In enacting the Act the Legislature established, in addition to a provisional licensing mechanism, (1) an inspection and reporting system to insure that long-term health care facilities comply with state statutes and regulations pertaining to patient care and (2) a citation system for the imposition of prompt and effective civil sanctions upon those facilities violating such statutes and regulations. (§ 1417.1.) Defendant skilled nursing facilities are admittedly long-term health care facilities under the Act. (§ 1418.)

The Act provides generally for complaint and licensure inspections of long-term health care facilities. (§§ 1419, 1422.) Normally an inspection must be made within 10 working days of the receipt of a complaint. (§ 1420.) If upon such an inspection the departmental director determines that a facility is in violation of any statute or regulation of any consequence relating to its operation and maintenance, he shall thereafter promptly (but not later than three business days after the inspection) issue a citation to the facility. (§ 1423.) These citations are either for class "A" violations (presenting an imminent danger to the patients or guests of the facility or involving a substantial probability that death or serious physical harm will result therefrom) or for the lesser class "B" violations (having a direct or immediate relationship to the health, safety, or security of patients). A class A violation carries a civil penalty of between $1,000 and $5,000, and a class B violation of between $50 and $250. (§ 1424, subds. (a) & (b).)[2] If a facility fails to

---

[1]All code section references hereafter are to the Health and Safety Code.

[2]If a class B violation is corrected within the time specified in the citation no civil penalty is imposed. (§ 1424, subd. (b).) There is, however, a lesser type of violation than a class B violation. (§ 1427.)

correct a violation within the time specified in the citation, a mandatory penalty of $50 a day is imposed for each day that the violation continues uncorrected. (§ 1425.)

If a facility desires to contest a citation or the proposed assessment of a civil penalty therefor, it shall within four business days after service of the citation so notify in writing the departmental director and request an informal departmental conference thereon. The director's designee for the county in which the facility is located shall then, within four business days of the receipt of the request, hold an informal conference, at the end of which he may affirm, modify or dismiss the citation or the proposed civil penalty. If the director's designee modifies or dismisses, he must state with particularity, in writing, his reasons for so doing and immediately send a copy of this statement to each party to the original complaint. If the facility desires to contest the conference decision, it must so inform the director in writing within four business days after it receives the decision. Otherwise the conference decision becomes the final administrative decision in the matter. (§ 1428, subd. (a).)

If a facility desires not to contest a citation, it may within four business days after the issuance of a citation send the department the minimum civil penalty for the violation involved. (§ 1428, subd. (b).) This is the subdivision which defendants claim renders the Act unconstitutional.

Upon a facility notifying the departmental director of its intention to contest a citation further, the director must immediately notify the Attorney General, who shall promptly act to enforce the citation in court by means of de novo trial. (§ 1428, subd. (c).) Enforcement actions in court under the Act shall be set for trial at the earliest possible date and shall have all available precedence accorded them. Furthermore, the trial judge must set the time for responsive pleadings and hearings in such enforcement actions "with the object of securing a decision as to such matters at the earliest possible time." (§ 1428, subd. (f).)

B. *The Citations at Issue*

Defendant Astoria was given a class A citation for an alleged violation of California Administrative Code, title 22, section 72517, subdivision (b). This regulation provides that a licensee shall accept and retain only those patients for whom it can provide adequate care. In

support of this citation, the Attorney General has alleged in his complaint that Astoria admitted a particular patient with a known tendency to wander away, that during the next two months or so this patient wandered away five separate times, and that on the last occasion she was found lying on a sidewalk with rib and kneecap fractures. The action before us is for the enforcement of a $2,000 penalty originally proposed and upheld by administrative conference decision.

Defendant York was given a citation for three alleged class A violations of California Administrative Code, title 22, sections 72315, subdivisions (e) and (f), and 72317, subdivision (a), with respect to one patient. These regulations have to do with keeping patients active and out of bed for reasonable periods of time, giving them care to prevent bedsores, contractures and deformities, and using measures to prevent and reduce incontinence. The patient involved developed at York severe bedsores, received but one exercise period despite a physician's order for daily muscle exercises and no assessment of his ability to participate in a needed bowel training program. York was initially assessed $15,000 for three alleged violations. A conference decision reduced the three claimed violations to two and the total penalty to $10,000. The Attorney General's action before us is for the recovery of the $10,000 penalty.

Defendant G.M.P.H. was given a class A citation for the development by one patient of extensive and severe bedsores, which thereafter became a contributing cause to her subsequent death elsewhere. G.M.P.H. was charged with violation of California Administrative Code, title 22, section 72315, subdivision (f)(1). This subdivision requires, among other things, that each patient be given care to prevent bedsores by changing the positions of bedfast patients and providing preventive skin care as appropriate. G.M.P.H. was initially assessed $5,000, but a conference decision reduced this to $2,500. The enforcement action before us is for recovery of this last-mentioned sum.

C.  *Defendants' Contentions*

In all three actions defendants, represented by the same counsel, asserted the federal and state unconstitutionality of the Act upon numerous grounds. As noted at the outset of this opinion, however, the

judgments under appeal in favor of defendants on the pleadings were granted on the sole ground that the penalty setup of the Act unconstitutionally deprived them of due process of law. The only trial court that expressly stated the basis for this conclusion of unconstitutionality, namely, the court in the G.M.P.H. action, said in its minutes, "In the court's view, the combined effect of Health and Safety Code Sections 1424 and 1428(b) do unnecessarily and unconstitutionally induces [*sic*] defendant and others not to contest the agency action and to waive the right to a hearing before the Superior Court." We may safely assume, though, that the other two trial courts thought much the same way because each court had before it essentially the same pleadings and memoranda of points and authorities.

### DISCUSSION

■ Defendants challenge the constitutionality of the option offered a cited licensee in section 1428, subdivision (b), of paying, within four business days after the issuance of a citation, the minimum penalty therefor instead of contesting it. They assert that this option unconstitutionally penalizes those cited licensees who choose to exercise their constitutional and statutory right of contesting citations. According to defendants, under the challenged subdivision, if a licensee pays a citation without contest, he pays no more than the minimum civil penalty; but if he contests a citation unsuccessfully, the resulting penalty may run as high as the maximum penalty. Furthermore, according to defendants, the option of paying the minimum penalty without contest constitutes an unnecessary but strong inducement to a cited licensee to waive his constitutional and statutory right to contest the citation, both administratively and in the courts. Finally, such a waiver could conceivably thereafter contribute to a subsequent loss of license (§ 1294), a misdemeanor conviction (§ 1290), and other harmful consequences.

Defendants frankly state that the foregoing challenge to the constitutionality of section 1428, subdivision (b), rests primarily on the decision of the United States Supreme Court in *United States* v. *Jackson* (1968) 390 U.S. 570 [20 L.Ed.2d 138, 88 S.Ct. 1209]. In *Jackson* the high court held the penalty provisions of the federal kidnaping act unconstitutional because they authorized the imposition of the death penalty *only* following a jury trial. According to the court these provisions discouraged the assertion by a defendant of his Fifth Amendment right to

plead not guilty and deterred the exercise of his Sixth Amendment right to demand a jury trial. The constitutional infirmity of these provisions lay, thus, in their needless encouragement of guilty pleas and jury waivers. (*Id.* at pp. 581-583 [20 L.Ed.2d at pp. 147-148].)

But the subdivision at issue in this case involves no such *needless* action by the state. We are dealing here with a statute which seeks to insure adequate long-term health care for a group of largely helpless patients by providing a thorough and prompt state system of inspection of the facilities that furnish them with such care and by further providing a prompt and effective system of essentially civil sanctions in order to eliminate speedily the inadequacies in such care that state inspections have revealed. The Act properly calls for the utmost speed in the disposition of citations. As already noted, by virtue of the very subdivision at issue, a cited licensee has but four business days from the issuance of a citation to decide whether to contest it and only four business days from its service to make its written request for administrative review thereof by an informal conference. (§ 1428, subd. (a).) It has the same limited time in which to notify the departmental director that it wishes to contest a conference decision. (*Ibid.*) The director must then *immediately* notify the Attorney General, who is required promptly to initiate an enforcement action (§ 1428, subd. (c)), which action must be expedited throughout its course by way of a preferential trial setting and otherwise. (§ 1428, subd. (f).)

The subdivision under attack (§ 1428, subd. (b)) is no more than a statutory offer of settlement of the citation at the earliest possible time in exchange for the least possible penalty. Actually it is a legislative offer to the cited licensee to plead in effect nolo contendere to the citation. It is true that the cited licensee may have ordinarily less than four business days within which to decide whether to accept this statutory offer of settlement, but up to three business days have already elapsed following the inspection which gave rise to the citation and presumably the cited licensee is at the very least somewhat familiar with conditions of patient care in its own facility. It certainly has time to consult with its legal counsel in making its decision whether to accept the statutory offer of settlement by payment of the minimum penalty. Its decision in this respect will undoubtedly be governed by its informed appraisal of its chances to defeat the citation. It must, of course, make a similar appraisal should it decide to contest the citation administratively and then be dissatisfied with the conference decision; or it may

decide to bypass the conference phase completely. In any event, it finally has to choose whether it wishes to seek the protection of a de novo trial in court or avoid the expense of such litigation.

From what we have said, it should be clear that time is quite properly of the essence in the enforcement of citations under the Act. Consequently, we agree with the decision of the San Diego division of this court in *Lackner v. Perkins* (1979) 91 Cal.App.3d 433, 438-440 [154 Cal.Rptr. 138], holding the subdivision at issue constitutional. That decision was not available to the trial courts in the actions before us. *Lackner* rested largely on *Colten v. Kentucky* (1972) 407 U.S. 104 [32 L.Ed.2d 584, 92 S.Ct. 1953], a decision of the United States Supreme Court subsequent to *Jackson.* Furthermore, the high court more recently said in *Corbitt v. New Jersey* (1978) 439 U.S. 212, 218-220 [58 L.Ed.2d 466, 474-475, 99 S.Ct. 492], "The cases in this Court since *Jackson* have clearly established that not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid. [Fn. omitted.] Specifically, there is no *per se* rule against encouraging guilty pleas. We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea. [Fn. omitted.]" The court went on to say that such a plea may obtain for a defendant not only the possibility but the certainty of a lesser penalty than the one he may receive if he chooses to stand trial. Since *Jackson* and *Corbitt* involved criminal proceedings and the matters before us are civil in nature, the *Corbitt* viewpoint should apply a fortiori here.

Finally, the legislative offer before us of a minimum penalty in return for the citee not contesting the citation seems quite analogous to a citee's discretionary forfeiture of minimum bail in return for dismissal of charges of traffic violations. (See Veh. Code, §§ 40512, 40512.5, 40521.)

This optional procedure for a minimum fine in traffic cases in lieu of contest was held constitutional in *United States v. Walters* (4th Cir. 1977) 564 F.2d 675, 675-676. Furthermore, our Supreme Court in *McDermott v. Superior Court* (1972) 6 Cal.3d 693, 696 [100 Cal.Rptr. 297, 493 P.2d 1161], described bail for a traffic offense as usually, in effect, a fine and one employed more for punishment and judicial convenience than to insure that a trial will take place. Bail in traffic cases

thus serves the same function as the civil penalties do in the litigation before us. In both situations there would appear to be no violation of constitutional due process.

## DISPOSITION

The judgments on the pleadings under appeal are reversed.

Allport, J., and Potter, J., concurred.