[No. B018819. Second Dist., Div. Two. Nov. 17, 1986.]

SUMMIT CARE-CALIFORNIA, INC., Plaintiff and Respondent, v.
DEPARTMENT OF HEALTH SERVICES, Defendant and Appellant.

---

---

## COUNSEL

John K. Van de Kamp, Attorney General, Anne S. Pressman and Paula L. Gibson, Deputy Attorneys General, for Defendant and Appellant.

Weissburg & Aronson, Robert J. Gerst, Robert M. Dawson and Robin J. Humphries, for Plaintiff and Respondent.

---

## OPINION

**GATES, J.**—The State Department of Health Services (Department) appeals from the judgment granting relief under Code of Civil Procedure section 473 to Summit Care-California, Inc. (Summit), the owner and operator of a facility known as Corbin Convalescent Hospital.[1] The Department contends: "[I.] Because the department has no legal duty to refer a citation contest to the Attorney General's office unless it receives a timely notice to do so, a writ of mandate cannot issue to compel that act and the trial court abused its discretion by issuing the writ. [II.] A limitations period may not be avoided by an order granting relief under Code of Civil Procedure section 473. [III.] [The r]ecord clearly demonstrates that the Department should not be estopped from asserting [Summit's] failure to comply with [the] statutory limitations period in Code of Civil Procedure section 473."

So far as we have been able to glean from this most meager appellate record, on January 31, 1984, the Department issued citation Nos. 92H-016-133 and 92H-016-134 to Summit. Just two days later a third citation, No. 92H-016-138, was issued. On February 6, 1984, Summit requested a citation review conference (CRC), which was held on February 28, 1984. Although the CRC is an informal proceeding, the licensee has the right to be repre-

---

[1]For purposes of clarity and simplicity we refer to respondent as "Summit," although it appears that certain of the described events actually involved the former licensee of Corbin Convalescent Hospital, Corbin Convalescent Hospital, Inc., which merged with Summit.

sented by counsel, to present oral or written evidence on its behalf and to explain any mitigating circumstances. (Cal. Admin. Code, tit. 22, § 72713.)

The hearing officer's decisions upholding the violations and imposing a total assessment of $24,250 were received at Summit's Studio City office on April 9, 1984. This assessment was trebled due to a previous violation, citation No. 216121.

As Summit was in the process of reorganizing and had transferred the review of matters relating to the operation of Corbin Convalescent Hospital to its Burbank office, the decisions were forwarded to that location where they were purportedly received on April 12. Though certainly not a determinative point, Summit does assert the Department had notice of this address change as a result of information contained in an application for change of ownership dated January 16, 1984.

These decisions were then referred to Summit's attorneys, who on April 17, 1984, the *sixth* business day after they had been received at Summit's Studio City office, notified the Department of Summit's intention "to contest the citations and the proposed assessment of civil penalties upheld by [the] Decisions."

On April 24, 1984, the Department demanded Summit pay the fines assessed as "the appeal to Superior Court was not timely and cannot be honored." Summit thereafter contacted the Department by mail on May 4 and June 21, 1984, concerning the "settlement" of the citations. On May 13 of the following year the Department notified Summit that the "position of the department is that the five-day period allowed by statute to contest a citation is nondiscretionary" and that Summit's attempted "appeal" of the three citations was late. However, the Department indicated it would "not make an issue" of the late filing of the underlying citation, No. 216121, due to the "unusual circumstances surrounding [it]."[2]

We begin our analysis of the issues here tendered with an examination of Health and Safety Code section 1428, subdivision (a), of the Long-Term Care, Health, Safety, and Security Act of 1973 (Health & Saf. Code, § 1417 et seq.). It provides in relevant part: ". . . If the licensee desires to contest a decision made after the citation review conference, the licensee shall inform the director in writing *within five business days* after he or she

---

[2]A copy of the Department's letter is attached as an appendix to this decision.

receives the decision by the director's designee. If the licensee fails to notify the director in writing that he or she intends to contest . . . the decision made by a director's designee after a citation review conference within the time specified in this subdivision, the . . . decision by a director's designee after a citation review conference shall be deemed a final order of the state department and shall not be subject to further administrative review." (Italics added.)

If the licensee notifies the director within the five-day period, the director must then immediately notify the Attorney General, who is required to act promptly to enforce the citation in court by means of a trial de novo. (Health & Saf. Code, § 1428, subd. (b); *Myers* v. *Astoria Convalescent Hospital* (1980) 105 Cal.App.3d 682, 685 [164 Cal.Rptr. 495].)

■ Relying upon *Kupka* v. *Board of Administration* (1981) 122 Cal.App.3d 791, 795 [176 Cal.Rptr. 214], the Department urges the five-day period in which a licensee may, in effect, "appeal" from the CRC decision is a statute of limitations and that, since the Legislature has not specifically provided for an extension of time upon a showing of good cause, it did not intend to permit relief under Code of Civil Procedure section 473.

■ It is, of course, well settled that "[s]tatutes of limitation are 'within the jurisdictional power of the legislature of a state' [citation]; . . ." (*Scheas* v. *Robertson* (1951) 38 Cal.2d 119, 125 [238 P.2d 982]; *Ocean Shore R.R. Co.* v. *City of Santa Cruz* (1961) 198 Cal.App.2d 267, 273 [17 Cal.Rptr. 892].) Nevertheless, this power is not boundless. A limiting period must not be "so manifestly inequitable" as to amount to a denial of due process. (*Ocean Shore R.R. Co.* v. *City of Santa Cruz, supra,* 198 Cal.App.2d at p. 273; *Valley Circle Estates* v. *VTN Consolidated, Inc.* (1983) 33 Cal.3d 604, 615 [189 Cal.Rptr. 871, 659 P.2d 1160].)

■ Were we to adopt the Department's interpretation, we could but hold a five-day limit to be unconscionably brief for we can readily imagine innumerable situations in which adhering rigidly to such a requirement would work an injustice. ■ However, this result can be avoided "by application of the principle that a statute which is reasonably susceptible of two constructions should be interpreted so as to render it constitutional. . . ." (*San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 942 [92 Cal.Rptr. 309, 479 P.2d 669]; *Estate of Skinker* (1956) 47 Cal.2d 290, 297 [303 P.2d 745, 62 A.L.R.2d 1137]; *People* v. *One 1950 Mercury Sedan* (1953) 116 Cal.App.2d 746, 749 [254 P.2d 666].)

■■■ Just as the Department properly determined it would be unfair to deprive Summit of a second opportunity to contest citation No. 216121 given the "unusual circumstances surrounding this citation" (see fn. 2, *ante*), it might well have been appropriate for the trial court to have exercised its discretion under Code of Civil Procedure section 473 with respect to Summit's failure to contest the CRC decision within five business days had Summit promptly sought judicial relief following its receipt of the Department's letter of May 13, 1985.

However, even then, after Summit had full knowledge of the Department's position regarding the finality of the three citations, it still took no action until it filed the present petition on September 25, 1985. No explanation whatsoever was offered below for this delay and no adequate excuse has been suggested here.

The Department had urged in points and authorities accompanying its answer to Summit's petition that Summit's request for relief was untimely since it came "almost 1 year and six months" after Summit received the Department's letter of April 24, 1984, which had indicated "the appeal was not timely and would not be honored." Although Summit charged the Department's "official response" was not issued until May 13, 1985, it made no attempt to explain or justify its own delay following receipt of that communication. That is to say, it ignored this hiatus completely both in its reply to the Department's opposition and when the matter was heard on November 12, 1985.

Further, in its appellate brief filed here Summit merely made the observation that after receiving ". . . the May 13, 1985 letter, it filed its Petition well within the six-month limitation period set out in Section 473." Therefore, in an effort to enlighten ourselves and to insure fairness to the parties, we invited them to submit written comments on this point.

In its response Summit concedes the existence of the shortcoming we had noted in its trial petition, but argues, in essence, that its nearly four and one-half month delay was reasonable because it "was faced with a procedural dilemma of some complexity, with no procedural road map to follow, and involving legal issues of first impression."

In our view such a claim is insufficient on its face. Among its several flaws it wholly ignores the fact that Summit had well over a year to investigate, to reflect upon, and to decide upon the most propitious action to take

in the event the Department ultimately determined to adhere to its earlier position. Furthermore, even if a failure to give any thought to possible judicial remedies prior to May 13, 1985, could be deemed excusable, any imaginable difficulties inherent in thereafter selecting an appropriate course of action, could not, as a matter of law, constitute an adequate excuse for Summit's failure to seek such relief in any fashion for a period equal to one-half that required for human gestation.

In the absence of any acceptable justification for such dilatoriness, the court should not have granted Summit's belated request. "To hold otherwise . . . would empower the trial court to dispense with the 'reasonable time' requirement of [Code of Civil Procedure section 473]." (*Benjamin* v. *Dalmo Mfg. Co.* (1948) 31 Cal.2d 523, 532 [190 P.2d 593] (cited with approval in *Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 895 [187 Cal.Rptr. 592, 654 P.2d 775]; *Conway* v. *Municipal Court* (1980) 107 Cal.App.3d 1009, 1019 [166 Cal.Rptr. 246]; *Schwartz* v. *Smookler* (1962) 202 Cal.App.2d 76, 81-83 [20 Cal.Rptr. 507]).)

It would also produce a result not "consistent with the stated purposes of the Act to provide *prompt and effective* discovery of violations and enforcement of the applicable statutes and regulations through administrative action." (Italics added.) (*Myers* v. *Eastwood Care Center, Inc.* (1982) 31 Cal.3d 628, 632 [183 Cal.Rptr. 386, 645 P.2d 1218]; *Lackner* v. *St. Joseph Convalescent Hospital, Inc.* (1980) 106 Cal.App.3d 542, 546 [165 Cal.Rptr. 198]; *Lackner* v. *Perkins* (1979) 91 Cal.App.3d 433, 436 [154 Cal.Rptr. 138].)

For similar reasons should any other licensee seek Code of Civil Procedure section 473 relief in future cases, its entitlement must be measured by a narrow standard. By way of example, only a 30-day period is generally allowed for filing petitions in mandate challenging administrative decisions (see Code Civ. Proc., § 1094.5, and Gov. Code, § 11523), and it has been held that even this relatively brief period is sufficient to preclude its extension by a section 473 motion. (*Kupka* v. *Board of Administration, supra,* 122 Cal.App.3d 791, 794.)

It is also to be hoped that following our decision here, the Legislature may reconsider the five-day limitation it now prescribes for review of the *more serious violations* of the Long-Term Care Act of 1973, i.e., class "A" and "AA" citations, and designate a time span sufficient to eliminate any need for extensions. Ironically, it already did this for the *less serious violations* of the act when in 1984 it amended section 1428 to establish a 60-day period for seeking judicial review of class "B" citations.

The judgment under review is reversed and vacated. Each party shall bear its own costs on appeal.

Roth, P. J., and Compton, J., concurred.

# APPENDIX

STA.2 OF CALIFORNIA—HEALTH AND WELFARE AGENCY GEORGE DEUKMEJIAN, Governor

## DEPARTMENT OF HEALTH SERVICES
714/744 P STREET
SACRAMENTO, CA 95814

 (916) 445-2070 May 13, 1985

Mr. Robert Gerst
Weissburg and Aronson, Inc.
2049 Century Park East
32nd Floor, 2 Century Plaza
Los Angeles, CA 90067

Dear Mr. Gerst:

This letter is in reference to your May 9, 1984 letter to me and its enclosures (May 9, 1984 letter to Ralph Lopez and Robert Dawson's April 4, 1984 letter to me). These letters concerned settlement of three "A" citations issued to Corbin Convalescent Hospital - 92H-016-133, 92H-016-134 and 92H-016-138 which had a total assessment after the CRC of $24,250. (This amount was predicated upon trebling based upon a previous citation - 216121.) You proposed to settle the three citations for $7,000.

I apologize for the delay in responding to your letter. However, subsequent communications from you tied the settlement of the citations to resolution of the department's denial of full licensure of Corbin Convalescent Hospital. (See, for example, your letter to Tom Warriner dated July 11, 1984 wherein you proposed settlement of $15,000 and nine months probation.) Because the department did not want to settle the licensure issue and litigation ensued, possible settlement of the citations was held in abeyance.

As you are aware, the licensure issue is resolved. In this letter I will set out the department's position with respect to the citation issues.

Citation Number 216121. As you have pointed out, on April 1, 1983 the facility submitted a check for $1,000, the statutory minimum payment in lieu of contest-ing the citation under Health and Safety Code section 1428(b). At this time it was unclear whether a corrected "B" violation could be used as the basis for trebling the penalty of a subsequent violation of the same regulation. Thus your client's check was returned pending resolution of the issue. You were informed (letter from Ralph Lopez dated April 1, 1983) that when the issue was resolved you would be notified and your client would have another opportunity to pay the minimum penalty or contest the citation.

In October, 1983 an opinion of the California Attorney General resolved the issue of whether trebling could be imposed where the previous violation was a corrected "B". [See 66 Ops.Cal.Atty.Gen. 393 (1983).]

On April 25, 1984 you were notified that as a result of the clarification by the Attorney General, the department could now accept the minimum payment or your client could contest the citation. In a letter to Ralph Lopez dated May 9, 1984 you notified the department that Corbin Convalescent Hospital intended to con-test the citation.

Mr. Robert Garst - 2 - May 13, 1985

We think allowing your client a second opportunity to contest the citation was a mistake on the part of the department. The unresolved issue concerned the amount of the minimum payment, not the five-day period to contest the citation. The department should have accepted the minimum payment and notified the licensee that it was being held in a trust account pending resolution of the issue concerning the correct amount for the minimum payment. Since we did offer the second opportunity to contest, however, it would not be reasonable to withdraw it now.

Your May 9, 1984 letter of contest was well beyond the five-day period allowed to contest a citation by Health and Safety Code section 1428(b). The position of the department is that the five-day period allowed by statute to contest a citation is nondiscretionary. However, it appears that you may have been given oral approval by Los Angeles County to take more than five days to reach your decision. In view of that fact and the other unusual circumstances surrounding this citation (described above), the department will not make an issue of the nondiscretionary nature of the five-day period allowed to contest in the case of citation number 216121.

Citation Numbers 92H-016-133, 92H-016-134 and 92H-016-138. Appeal of all of these citations was late. The total trebled assessment for these three citations is $24,250. It is the department's position that $8,250 is now due and payable ($3,000 for citation number 92H-016-133; $5,000 for four counts of citation number 92H-016-133 and three counts of 92H-016-134 (combined into a single "A" at the CRC); and $250 for citation number 92H-016-138). Your client should make arrangements to pay $8,250 by June 15, 1985. Payment by certified check should be made out to the Department of Health Services and mailed to the Los Angeles Office to the attention of Vivian Porath, County of Los Angeles, Department of Health Services, 313 North Figueroa Street, Room 317, Los Angeles, CA 90012. If payment is not received by that date the department will offset the amount now due from your client's Medi-Cal reimbursement.

Provided that citation number 216121 is resolved in favor of the department, the trebled increment - $16,000 on citation numbers 92H-016-133 and 92H-016-134 - will be immediately due and payable.

A meeting with me concerning these citations would not be beneficial to your client. Further, communications concerning this issue should be with Ralph Lopez and Susan Bertken (916-322-9422).

Very truly yours,

Charlene Stewart
Deputy Director
Licensing and Certification Division

cc: Ralph Lopez
 Susan Bertken