[Civ. No. 49104. First Dist., Div. Four. Feb. 2, 1981.]

EDWIN W. BEACH, as Director, etc., Plaintiff and Respondent, v. WESTERN MEDICAL ENTERPRISES, INC., Defendant and Appellant.

COUNSEL

Weissburg & Aronson and J. Mark Waxman, for Defendant and Appellant.

George Deukmejian, Attorney General, Thomas E. Warriner, Assistant Attorney General, Charlton G. Holland and Ralph M. Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CHRISTIAN, J.**—Western Medical Enterprises appeals from a judgment enforcing civil penalties assessed by respondent Director of the State Department of Health under terms of the Long-Term Care, Health, Safety, and Security Act of 1973. (Health & Saf. Code, § 1417 et seq.)

Appellant operates Driftwood Convalescent Hospital, which houses an average of 96 patients needing skilled nursing care. Some patients are ambulatory, some are confined to wheelchairs, and some are semi-comatose.

### Class "A" Citation

The State Department of Health is required to inspect twice each year every facility covered by the act. (Health & Saf. Code, § 1422.) In

July 1977, Clyde Stovall, respondent's representative, inspected appellant's hospital. He saw that hallway call lights for four patient rooms were not functioning. Stovall considered this to be a violation of title 22, California Administrative Code, section 72629, subdivision (a),[1] and concluded that the violation justified the issuance of an "A" citation (Health & Saf. Code, § 1424). The call lights in question are part of a communication system between patient rooms and hospital personnel. When a patient pushes a button next to his bed, a signal in the form of a warning light and an alerting noise is transmitted to the main nurses' station. From that station, a nurse can by intercom query the patient to determine the nature of the problem. If immediate assistance is required, the nurse can use a sound system to call and be heard throughout the building. In addition to the warning system at the nurses' station, the patient's call button turns on a light just outside the room. It is this signal, the hallway call light, which was not functioning outside rooms 116, 214, 217, and 200 during the July inspection. The patient call buttons did produce a warning light and alerting signal at the main nurses' station.

Respondent proposed a penalty of $2,500 as a result of the class "A" citation issued by Stovall. The penalty was contested by appellant, who requested a citation review conference (Health & Saf. Code, § 1428, subd. (a).) Both the citation and the penalty were upheld at the conference. Appellant resisted the penalty and respondent sued for enforcement. (Health & Saf. Code, § 1428, subd. (c).) The trial court determined that the inoperative hall call lights presented an imminent danger to patients and affirmed the class "A" citation and penalty.

### Class "B" Citation

In December 1977, Eleanor Ferguson, another representative of respondent, inspected the hospital. Ferguson discovered that certain patients had not been provided with equipment necessary to prevent decubitus (bed sores). A staff member agreed with Ferguson's assessments of patient needs, but indicated that all such equipment available in the facility was in use.

---

[1]California Administrative Code, title 22, section 72629, subdivision (a) provides in pertinent part: "A nurses' call system shall be maintained in operating order in all nursing units. . . . The minimum requirements are: . . . (2) A visible signal in the corridor above the corridor door of each patient's bedroom, visible from all parts of the corridor. (3) An audible signal and a nurses' call annunciator indicating the room from which the call originates. . . ."

As a result of Ferguson's inspection, respondent issued a class "B" citation. (Cal. Admin. Code, tit. 22, § 72325, subd. (a).)[2] A 15-working-day period, from December 12, 1977, to January 3, 1978, was specified for appellant to cure the violation. (Health & Saf. Code, § 1424, subd. (b).)[3] Respondent assessed a civil penalty of $250 and a continuing penalty aggregating $400 for the 8-day period beginning January 4, 1978, and running through and including January 11, 1978, when the violation was cured. Appellant contested this citation. At the citation review conference, both the citation and the amount of time allowed for correction were upheld. Appellant resisted the penalty, respondent sued, and the two citations were tried together.

Attacking the class "A" citation, appellant contends that section 1424, subdivision (a) of the act and section 72702 of title 22, California Administrative Code, insofar as they define class "A" violations, are unconstitutionally vague and that their enforcement is consequently a denial of due process. Second, appellant contends that the evidence and the findings do not support the class "A" citation.

## Due Process

A class "A" citation results from a violation which presents "imminent danger to the patients" or "a substantial probability that death or serious physical harm would result therefrom."[4] ▮ Appellant contends that the statute and the regulation are so vague that "'men of common intelligence must necessarily guess at [their] meaning and differ as to [their] application'" and therefore that enforcement is a denial of due process. (*McMurtry* v. *State Board of Medical Examiners* (1960) 180 Cal.App.2d 760, 766 [4 Cal.Rptr. 910].)

---

[2]California Administrative Code, title 22, section 72325, subdivision (a), provides in pertinent part: "Equipment and supplies of the quality and in the quantity necessary for care to patients, as ordered or indicated, shall be provided and shall include but not be limited to . . . ."

[3]Health and Safety Code section 1424, subdivision (b) provides in pertinent part: "A class 'B' violation is subject to a civil penalty in an amount not less than . . . ($50) and not exceeding . . . ($250) for each and every violation. A citation for a class 'B' violation shall specify the time within which the violation is required to be corrected. If a class 'B' violation is corrected within the time specified, no civil penalty shall be imposed."

[4]Health and Safety Code section 1424 provides in pertinent part: "(a) Class (A) violations . . . present an imminent danger to the patients . . . of the . . . health care facility or a substantial probability that death or serious physical harm would result therefrom . . . (b) Class (B) violations . . . have a direct or immediate relationship to

After appellant's opening brief was filed, this court addressed another vagueness challenge to section 1424, subdivision (a). In *Lackner* v. *St. Joseph Convalescent Hospital, Inc.* (1980) 106 Cal.App.3d 542 [165 Cal.Rptr. 198], the Director of Public Health issued a class "A" citation, alleging inadequate preventive care, to a health care facility where a patient had developed "grossly necrotic" (106 Cal.App.3d at p. 548) bed sores. The facility contested the citation on several grounds, including a claim that section 1424, subdivision (a) was unconstitutionally vague. The court upheld the constitutionality of the statute. *St. Joseph* is dispositive of appellant's constitutional challenge in the present case.

### Sufficiency of the Evidence

Respondent's representative, Stovall, testified that he issued a class "A" citation for the failure of the hallway call lights because of a statutory requirement for a working nurses' call system, including a hallway call light outside each patient's room (Cal. Admin. Code, tit. 22, § 72629, subd. (a).) Appellant contends that the evidence does not support a class "A" violation and, further, that sections 72702 and 1424, subdivision (a) do not mandate a class "A" violation, but instead require a more serious threat to the health and safety of the patients than was present in this case. Appellant argues that respondent offered no evidence as to the condition of the patients in rooms where the hallway lights were not functioning, and ignored the actual condition of the patients, some of whom were ambulatory and some of whom were semi-comatose, when determining that the violation warranted a class "A" citation. Further, appellant argues that respondent should have considered the fact that the communication system between the patients and the nurses' station was working.

Appellant also challenges the trial court's findings of fact, complaining that the court made no findings to indicate that the more likely consequence of the violation was death or serious physical harm to a patient, or that there was a substantial probability of any type of serious physical harm to any of the patients as a result of the nonfunctioning hallway call lights.

---

the health, safety, or security of . . . patients, other than class (A) violations."
California Administrative Code, title 22, section 72702, provides in pertinent part: "A class 'A' violation is any violation . . . which presents an imminent danger to the patients . . . or a substantial probability that death or serious physical harm would result therefrom."

It is true that the regulation does not *mandate* a class "A" citation for violations of the character listed, but requires a consideration of the circumstances of each alleged violation. A violation is of class "A" grade "whenever the situation in which it occurs presents an imminent danger to the patients of the facility or a substantial probability that death or serious physical harm would result therefrom." (Cal. Admin. Code, § 72703, which also lists violations of Cal. Admin. Code, § 72629, subd. (a) as among those for which class "A" citations *may* result.)

This court in *St. Joseph* held that "'imminent danger'" means an immediate threat of injury to the patient, and that the danger must be "'serious'" in nature. (106 Cal.App.3d at p. 552.) The court also referred to the need for an examination of the facts of the case: "Whether a given set of facts produces an imminent danger of serious harm to patients and guests is a question of fact, as well as one of degree. Both the term 'imminent' and the implied requirement of 'severity' involve questions of *degree*. Inquiry into 'degree' is inherent in any statute which creates a hierarchy of offenses." (*Id.*, at p. 552.)

Appellant points out that Stovall knew nothing of the condition of the patients in the rooms with nonfunctioning hallway call lights. Appellant argues that because some of the patients were ambulatory and the others were semicomatose, there was no need for call lights. But section 72629, subdivision (a) requires a functioning communication system in each patient's room, and does not limit the requirement to patients with certain physical conditions. (See fn. 1.) There is a strong possibility that elderly patients, even when ambulatory, whose health requires their confinement in a health care facility may *at any time* require emergency care. Also, patients who are semicomatose may *at any time* have similar emergency needs, and others who are present should be able to call for help in their behalf.

Next, appellant argues that because the call system to the main nurses' station was working, the nonfunctioning hallway call lights did not present an imminent danger to the patients in the four rooms. This argument could be persuasive if appellant could show that the nurses' station was monitored at all times. But Stovall testified that the nurses' station was unattended for portions of the day. Thus the patients in the four rooms were at times without an adequate call system. It is reasonable to infer that a risk of harm is inherent in a situation where a

patient cannot call for help from the nursing staff. The absence of the call system presented "potentially serious consequences to patients." (*St. Joseph, supra*, 106 Cal.App.3d at p. 552.)

Appellant argues that because no serious consequences resulted to the patients, the violation was not of a class "A" nature. But the legislation was designed to provide an inspection and reporting system to ensure that long term health care facilities provide safe and effective care, and to establish a system for penalizing violations of the laws and regulations. (Health & Saf. Code, § 1417.1.) There is no requirement that death or serious physical harm actually result before a citation may be issued.

Finally, appellant argues that the findings of the trial court do not support a class "A" citation. The court made a finding that the hall signal lights were inoperable. That finding was of ultimate fact. It supports the court's conclusion of law imposing a class "A" penalty.

Appellant challenges the class "B" citation on three grounds. Appellant contends first that the regulation is unconstitutionally vague and that its enforcement thus denies due process; second, that no evidence shows the regulation was in fact violated; third, that the time respondent allowed for correction of the violation was impossible to meet.

### Due Process

The class "B" citation alleges that appellants violated California Administrative Code, title 22, section 72325, subdivision (a), which requires that "Equipment and supplies of the quality and in the quantity necessary for care to patients, as ordered or indicated, shall be provided ...." (See fn. 2, *ante.*) Appellant contends that the regulation did not provide adequate notice of prohibited conduct and failed to establish a standard of conduct which could be uniformly interpreted by the judiciary and administrative agencies.

Although the regulation does not specify types and amounts of equipment needed, it does require equipment and supplies in amount and type, as indicated, *to provide proper patient care.* Respondent's representative, Ferguson, is a registered nurse and licensed hospital administrator. She testified that requirements regarding decubitus preventive equipment are determined by the standards of the nursing

profession. Specificity may be supplied to a regulation or statute by reference to a standard of practice in the particular profession (*Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 233 [82 Cal.Rptr. 175, 461 P.2d 375]; *Hand* v. *Board of Examiners* (1977) 66 Cal.App. 3d 605, 622 [136 Cal.Rptr. 187]) or "by the common knowledge of members of the particular vocation . . . ." (*Perea* v. *Fales* (1974) 39 Cal.App.3d 939, 942 [114 Cal.Rptr. 808].) Here, according to the evidence, the certainty regarding the required type and amount of decubitus preventive equipment necessary to provide proper care for patients was supplied by standards of practice within the nursing profession.

Appellant further argues that because no citation for failure to have decubitus preventive equipment was issued during the July inspection when the facility had the same equipment in use, the regulation fails to set forth a standard that can be uniformly applied. The fact that an inspector does not detect or cite a deficiency does not entitle a licensee to maintain the deficiency if it is later detected and cited. Appellant's contention that the regulation is unconstitutionally vague is without merit.

### Sufficiency of the Evidence

During the December inspection, a staff member provided Ferguson with a list of approximately 41 decubitus and decubitus-prone patients, 9 of whom had developed ulcers in the hospital. Accompanied by staff members, Ferguson inspected these patients, giving particular attention to their physical condition, the preventive equipment in use, and where appropriate, their medical records. Subsequently, she discussed with a staff member certain patients who needed additional preventive equipment. The staff member indicated that although the hospital was aware of the need for additional preventive equipment, and had ordered such equipment the previous week, all preventive equipment presently in the hospital was in use. Ferguson also discussed with the administrator of the hospital the shortage of equipment and the type of equipment the hospital needed in order to be in compliance.

Appellant argues that no violation of section 72325 existed because at trial Ferguson failed to identify any patient who lacked equipment ordered by the patient's physician or by any other licensed health care professional. However, the regulation refers to equipment "necessary for care to patients, *as ordered or indicated.*" (Italics add-

ed.) Though no evidence was introduced to show that the decubitus equipment had been *ordered* by a physician, the phrase "as indicated" supports an inference that when a patient's condition requires certain equipment, the fact that no physician has ordered that equipment does not relieve the hospital of the responsibility for providing equipment necessary for patient care. In addition, Ferguson's inability to recall at trial particular decubitus patients, and the failure of either side to introduce as evidence the list of decubitus patients, do not negate the hospital's requirement to provide equipment for proper patient care.

The evidence supported the class "B" citation. Ferguson observed patients with decubitus ulcers, some of which had developed in the hospital; she also observed decubitus prone patients. Both groups of patients lacked necessary decubitus preventive equipment. Hospital personnel knew of the need and the shortage. Appellant's challenge to the citation is without merit.

### *Time for Correction*

Appellant contends that the citation did not allow adequate time for correction. On that basis the continuing penalty of $50 for each day of deficiency was itself a statutory violation.[5]

Appellant contends that Ferguson did not consider the factors listed in California Administrative Code, title 22, section 72715, subdivision (d)(2) when she specified the date for correction. Appellant further argues that Ferguson's failure to consult with hospital representatives

---

[5]Health and Safety Code section 1424 provides in pertinent part: '(b) Class 'B' violations are violations which the state department determines have a direct or immediate relationship to the health, safety, or security of long-term health care facility patients. . . . A citation for a class 'B' violation shall specify the time within which the violation is required to be corrected. If the class 'B' violation is corrected within the time specified, no civil penalty shall be imposed."

California Administrative Code, title 22, section 72715, provides in pertinent part: "(d) Each citation. . .shall include at least the following: [¶] (2) The earliest feasible time for the elimination of the condition constituting the violation. Such time shall be the shortest possible time within which the licensee reasonably can be expected to correct the alleged violation. In prescribing such time, the Department shall consider the following factors: "(A) The seriousness of the alleged violation.

"(B) The number of patients affected.

"(C) The availability of required equipment or personnel.

"(D) The estimated time required for delivery, and any installation, of required equipment.

"(E) Any other relevant circumstances. . . ."

before setting the correction date should vitiate the continuing penalty.

At trial, to show the impossibility of obtaining the preventive equipment within the time allowed, the hospital administrator testified that truck strikes and bad weather in the east had delayed arrival of the equipment. He also testified about his unsuccessful attempts to get equipment from other hospitals.

Ferguson testified that she specified 15 working days for correction of the violation because the hospital had been without the equipment for a considerable time, the equipment was necessary for prevention of decubitus ulcers, and 15 days seemed adequate for obtaining the equipment. She further testified that she made no determination whether or not it was possible to get the equipment within that period.

■ Appellant contends that section 72715, subdivision (2) requires respondent to base the time for correction on the availability of the equipment. The regulation does direct the department to *consider* such factors, but also provides that the violation be eliminated within "[t]he earliest feasible time," and that "[s]uch time shall be the shortest possible time within which the licensee reasonably can be expected to correct the alleged violation." (Cal. Admin. Code, tit. 22, § 72715, subd. (d)(2); see fn. 5.)

Testimony at trial concerned conditions (strikes and weather) responsible for the delay in obtaining preventive equipment. Even if these unforeseen conditions contributed to the delay and therefore to appellant's continuing penalty, they were unknown to Ferguson and allowance for them was not required. In addition, a staff member told Ferguson that the equipment shortage had existed for a period of time, and had been reported to hospital administrators. Given those facts and a statutory direction that the violation be corrected within the shortest possible time, the trial court was justified in concluding that Ferguson reasonably found 15 working days provided appellant with adequate time to obtain the equipment.

■ Appellant contends that the entire act is unconstitutional in that it penalizes licensees charged with violations of the act for exercising their statutory and constitutional rights to contest their alleged liability.

Within four business days of receipt of a citation, a licensee may pay to the department the minimum penalty authorized in section 1424 for class "A" and class "B" violations in lieu of contesting the citation. (Health & Saf. Code, § 1428, subd. (b).) Appellant argues that this penalty scheme exposes licensees who contest violations to a higher penalty and thus induces them to pay the lesser amount and abandon efforts to contest citations.

*Lackner v. St. Joseph Convalescent Hospital, Inc., supra,* 106 Cal. App.3d 542, is dispositive of appellant's argument. There this court rejected the contention that the minimum penalty provision of section 1428, subdivision (b) was unconstitutional because of its "'chilling effect'" on the exercise of the right to contest a penalty. (106 Cal.App.3d 542, 554; see also *Corbitt v. New Jersey* (1978) 439 U.S. 212, 218-220 [58 L.Ed.2d 466, 473-474, 99 S.Ct. 476]; *Colten v. Kentucky* (1972) 407 U.S. 104 [32 L.Ed.2d 584, 92 S.Ct. 1953]; *Myers v. Astoria Convalescent Hospital* (1980) 105 Cal.App.3d 682 [164 Cal.Rptr. 495]; *Lackner v. Perkins* (1979) 91 Cal.App.3d 433, 438-440 [154 Cal.Rptr. 138].)

■ Appellant contends that the court's award of total costs of suit to respondent was authorized neither by applicable statutes nor by case law. Appellant argues that this cause is an action by the state to recover statutory civil penalties, and as such, is not an action for recovery of money or damages and does not fall under Code of Civil Procedure section 1032, subdivision (a).[6] Rather, appellant claims that this action falls under section 1032, subdivision (c)[7] and the trial court should therefore have apportioned costs between the parties. In the alternative, appellant argues that even if section 1032, subdivision (a) applies, the causes of action were totally unrelated to one another legally and factually, and costs should therefore have been apportioned to the parties because appellant prevailed as to some citations. Second, appellant argues that because appellant prevailed on the majority of issues raised in the original complaint, equity demands that costs be awarded to appellant, or at the very least, apportioned between appellant and respondent.

---

[6]Code of Civil Procedure section 1032, subdivision (a) provides in pertinent part: "In the superior court ... costs are allowed of course: To a plaintiff upon a judgment in his favor ... in an action for the recovery of money or damages ...."

[7]Code of Civil Procedure section 1032, subdivision (c) provides in pertinent part: "In other actions than those mentioned in this section costs may be allowed or not, and, if

*Section 1032, Subdivision (a)*

Costs are allowed of course in an action for the recovery of money or damages. (Code Civ. Proc., § 1032, subd. (a).) Respondent's complaint sought an award of money and the judgment granted that award. No other relief is legally permitted to respondent in such an action. (Health & Saf. Code, § 1417 et seq.) Though section 1032, subdivision (a) does not mention statutory civil penalties, because this action seeks to recover money, it falls within the general category. One court rejected an attempt to limit the coverage of section 1032, subdivision (a): "Thus, one should not read into the statute allowing costs a restriction which has not been placed there." (*Rappenecker* v. *Sea-Land Service, Inc.* (1979) 93 Cal.App.3d 256, 263 [155 Cal.Rptr. 516].) Here, as in *Rappenecker*, appellant has not shown legislative intent to exclude the challenged costs. Section 1032, subdivision (a) controls, and section 1032, subdivision (c) does not apply.

Appellant's alternative argument with respect to section 1032, subdivision (a) is unclear. Appellant seems to be saying that the causes of action are unrelated to each other, legally and factually, and therefore costs should be apportioned between the parties. The evidence does not support this contention. The causes of action arose from appellant's violations of the act in the operation of its health care facility, and are thus related. In addition, appellant cites section 1032, subdivision (a) in its claim for apportionment of costs, yet section 1032, subdivision (a) does not refer to apportionment.

*Majority of Issues*

Second, appellant contends that because appellant prevailed at trial on some of the issues, costs must be apportioned. Case law is contrary to this contention. Where two causes of action are at issue, and a judgment results for the plaintiff on one issue and for the defendant on the other, *plaintiff has a judgment in his favor* and is entitled to costs, whether the recovery be for the whole or part of the claim, or whether the claim is made up of one or several causes of action. (*Western Concrete Structures Co.* v. *James I. Barnes Constr. Co.* (1962) 206 Cal. App.2d 1, 11 [23 Cal.Rptr. 506].) Therefore, though appellant pre-

---

allowed, may be apportioned between the parties, on the same or adverse sides, in the discretion of the court."

vailed on several issues, because respondent prevailed on the others, costs for all issues at trial were properly awarded to respondent.

The judgment is affirmed.

Caldecott, P. J., and Poché, J., concurred.