Opinion
VICTOR, P. J.
This is an appeal by Waterman Convalescent Hospital following a court trial in the municipal court on a citation issued by the Department of Health Services of the State of California. The citation alleged violations of the Department of Health Services Administrative Regulations in the care and treatment of an elderly patient. For ease of reference in the balance of this opinion, the plaintiff and respondent shall be referred to as the Department, the defendant appellant as Hospital, and the patient as Patient.
Hospital is a long-term health care facility licensed by the State of California. The Department is charged with the administration and enforcement of the Long-Term Care, Health, Safety, and Security Act of 1973, Health and Safety Code section 1417 et seq. Patient is an 85-year-old woman suffering from osteoarthritis and Alzheimer’s disease.
Patient’s physician at the time of admission to Hospital ordered, “Postural support, PRN [which means as needed] safety and positioning.” Hospital’s *Supp. 12 patient care plan on the date of admission identifies as a problem, “Safety, PT [patient] is confused and may wander.”
The patient care plan recited the following precautions to address the identified problem: (1) Keep side rails up at all times when patient is in bed. (2) Keep call light cord within easy reach. (3) Answer call light promptly. (4) Use postural support for safety and good body alignment. (5) Keep surrounding environment clear of debris.
At 9:45 p.m., on April 3, 1987 (the day following her admission), Patient was found standing by her bed. She stated that she had fallen. A fellow patient stated that Patient climbed out of the bed and had fallen. The nurse’s progress notes following that incident stated that postural supports were applied for safety and protection.
One month later, on May 3, 1987, Patient was found sitting upright on the floor in her room in a puddle of urine. (The nurse’s records do not indicate the time of this incident.) Patient stated that she was on the way to the bathroom, lost her urine, and slipped. The nurse’s progress report on this date indicated that the patient was returned to bed, and that the waist postural support was intact.
Two weeks later, on May 16, 1987, Patient was found on the floor in her room in a puddle of urine. She was bleeding from a head wound behind her right ear. The bed rails were up. This incident occurred in midafternoon about 3:20 p.m.
Patient was sent to a hospital emergency room. She suffered a fractured hip which required surgery. She did not return to Hospital following surgery.
The Department initiated an investigation of Hospital after receiving a complaint following Patient’s third fall. The Department issued a class “A” citation against Hospital pursuant to Health and Safety Code section 1417 et seq. Hospital was cited for violating title 22, California Code of Regulations, sections 72319, subdivision (k)(l) and 72311, subdivision (a)(1)(C). The Department assessed a civil penalty against Hospital of $5,500.
The Department filed a complaint in the municipal court to enforce the citation. The Department prevailed at trial. This appeal followed.
Before directly addressing the issues on appeal, an exposition of those sections of the California Code of Regulations thought by the Department to have been offended, and a corresponding reference to the pertinent recitations in the issued citation are necessary.
*Supp. 13 Section 72311, subdivision (a)(1)(C),[1] in pertinent part, provides as follows:
“(a) Nursing service shall include, but not be limited to, the following: “(1) Planning of patient care, which shall include at least the following:
“(C) Reviewing, evaluating and udating of the patient care plan as necessary by the nursing staff and other professional personnel involved in the care of the patient at least quarterly, and more often if there is a change in the patient’s condition.”
Section 72319, subdivision (k)(l) reads as follows:
“(k) ‘Postural support’ means a method other than orthopedic braces used to assist patients to achieve proper body position and balance. Postural supports may only include soft ties, seat belts, spring release trays or cloth vests and shall only be used to improve a patient’s mobility and independent functioning, to prevent the patient from falling out of a bed or chair, or for positioning, rather than to restrict movement. These methods shall not be considered restraints.
“(1) The use of postural support and the method of application shall be specified in the patient’s care plan and approved in writing by the physician or other person lawfully authorized to provide care.”
The citation issued by the Department alleged that the care plan neglected to identify the problem of frequent falls by Patient and it failed to establish a plan of care to prevent falls and to protect Patient. It further indicated that Hospital’s documentation supported the use of postural supports only when a patient is up in a wheelchair.[2] The citation recited:
“The lack of accurately assessing the patient for possible injury by the nursing staff subjected the patient to unnecessary risk of surgery, increased *Supp. 14 pain and discomfort, and a prolonged rehabilitation due to her falling and fracturing her hip. Patients with a diagnosis of Alzheimer’s disease are known to be forgetful and confused and are dependent on the judgment of the nursing staff to protect them from harm and injury by maintaining a safe environment.
“The failure of the facility to secure the patient’s safety by utilizing postural supports ordered for the patient presented either imminent danger that death or serious harm would result or a substantial probability that death or serious physical injury would result.”
It is this last allegation of imminent danger or substantial probability to Patient of death or serious physical injury which is the basis for the most serious class “A” citation issued by the Department.
We think both sides agree, with exceptions not material here, that Hospital could not use postural supports as restraints to modify Patient’s behavior of wandering or climbing out of bed. “[Ejvery person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint. . .” (Civ. Code, § 43.)
Section 72319 provides in pertinent part that physical restraints for behavior control require the signed order of a physician. Further, the signed order must be designed to lead to a less restrictive way of managing and eliminating the behavior for which the restraint is applied. Also, a patient care plan which includes the use of physical restraint for behavior control must specify the behavior to be eliminated, the method to be used and the time limit for use of the method.
With that principle in place, Hospital contends that any deficiencies in the care plan because of the incidents of Patient’s falls, were not class “A” violations. It contends that Patient’s propensity to climb out of bed and wander was a behavior trait which, under the circumstances of this case, it was prohibited by law from controlling by the use of physical restraints. Hospital concludes, therefore, that because Patient’s propensities were behavior traits and not a change in Patient’s condition, no update of the care plan was required. Hospital also argues that even if the Patient’s propensity to climb out of bed was a condition requiring an update of the care plan, the only way to control that propensity was to use prohibited restraints.
The Department’s position is that at least after the first incident where Patient climbed out of bed and fell, Hospital should have recognized Patient’s climbing/falling was a change in her condition. Department contends *Supp. 15 this change in condition should have been addressed in an updated care plan. At oral argument, the Department did did not suggest what Hospital should have prescribed in the updated care plan. The Department’s posture was that it was up to Hospital to be innovative in its care plan to treat this condition.
Whether Patient’s climbing out of bed with consequent falls was a behavior trait, or a change in condition manifesting the Patient’s Alzheimer’s diagnosis and other health problems, appears to us to be better left to the ruminations of semanticists in academia. Section 72311, subdivision (a)(1)(C) requires updating as necessary, but in any event, on a quarterly basis, and even more often if there is a change in the patient’s condition. Remedial statutes must be liberally construed to effectuate their purpose. (California State Restaurant Assn. v. Whitlow (1976) 58 Cal.App.3d 340, 347 [129 Cal.Rptr. 824].) The Legislature has declared that it is the public policy of the state to assure that long-term health care facilities provide the highest level of care possible. Health & Saf. Code, § 1422 subd. (a).) These rubrics lead us to the conclusion that Patient’s falls necessitated a care plan for the instruction of the various shifts of nurses to assure the Patient the highest level of care possible.
The alleged violation of section 72319, subdivision (k)(l) is not that the care plan did not specify postural supports to prevent Patient from climbing out of bed and falling. As we understand that allegation, the delict is the failure to specify in the care plan the type of postural support to be used and when the support should be used. The regulation’s demand for specificity of type of postural support and the application of the support and the method of application was presumably designed to focus the rotating shifts of nurses on the particular needs of a patient, and perhaps to avoid the situation where the support could be used as an unauthorized restraint.
We focus, as we must, on whether there is substantial evidence to support the trial court’s finding that Hospital violated the two administrative regulations for not stating with specificity the kind and method of application of postural supports in the patient care plan and further for failing to update the patient care plan when Hospital became aware of Patient’s propensity to climb out of bed and fall.
The cases and formulations of the substantial evidence rule on appeal are legion. (For a collection of authorities on this proposition, see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 278 et seq., p. 289 et seq.) Here, the evidence is uncontradicted that the care plan did not specify the method, types and application of postural supports. The evidence shows that the care *Supp. 16 plan was not updated, albeit Hospital contends that no update was required under the regulations. We find substantial evidence to support the alleged violation.
Hospital also contends on appeal that three Department witnesses were permitted, over objection, to testify that Hospital was guilty of violating the two cited regulations. Hospital urges that the testimony of witnesses Peterson, Hendricks and Moore was inadmissible because they could not properly testify on questions of law or the interpretation of the statute. (Communications Satellite Corp. v. Franchise Tax Bd. (1984) 156 Cal.App.3d 726, 727 [203 Cal.Rptr. 779].)
On review of the questioned testimony, it is disputable whether an objection to the supposed improper expert witness testimony was properly raised and preserved on the trial court record. It is arguable whether the disputed testimony (at least in part) was on questions of law or statutory interpretation. The trial court recognized in ruling on an objection that it was the final arbiter of whether or not there was a violation of the regulations, and not the expert witnesses. Assuming for the sake of argument that the witnesses were erroneously permitted to give an opinion on questions of law and interpretation of statutes, we find that the error did not result in a miscarriage of justice. (Evid. Code, § 353.)
Hospital’s next contention on appeal is that the statutory scheme for the imposition of penalties such as those imposed here is arbitrary and capricious, and violates federal and state guarantees of due process and equal protection. The challenged statutes are Health and Safety Code sections 1424, 1428, and 1428.1. Section 1424 establishes minimum and maximum penalties for each class of violation. It also lists relevant facts to be included in fixing the amount of the penalty. Section 1428 tracks section 1424 in the event there is a contest of the citation. Section 1428.1 authorizes a licensee to pay one-half of the penalty or the minimum penalty, whichever is greater, within 15 days after the issuance of a citation rather than contesting the citation.
Dealing with this last section first, Hospital asserts that this opportunity to compromise a penalty by not contesting the citation is an unconstitutional chilling or abridgement of the right of free access to the courts and the right to petition the government for redress of grievances. (Of course, in this case, Hospital was unchilled and suffered no apparent abridgement in its lawyering in both the trial court and the appellate department.)
The Courts of Appeal have reached this issue long before we have. (Lackner v. Perkins (1979) 91 Cal.App.3d 433 [154 Cal.Rptr. 138]; Myers v. *Supp. 17 Astoria Convalescent Hospital (1980) 105 Cal.App.3d 682 [164 Cal.Rptr. 495]; Beach v. Western Medical Enterprises, Inc. (1981) 116 Cal.App.3d 153 [171 Cal.Rptr. 846].) If the Auto Equity doctrine has any meaning, we, as an appellate department, are bound to follow the decisions of higher appellate courts. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].)
In Lackner v. Perkins, supra, 91 Cal.App.3d 433, the court overruled the constitutional challenge to the 50 percent discount for settling because the option was in the nature of a nonbinding settlement offer. Additionally, it held that the trial de novo features of the proceedings presented the licensee with a fresh determination of liability.
Hospital, in its reply brief, has abandoned its chills-and-abridgement argument, and instead decries the lack of standards in fixing the penalty to assure that equal malefactors are assessed equal penalties. Further, Hospital finds no solace in the de novo review features of the statute because a judge is no better in exercising standardless discretion than an administrator.
We have found no case directly on point vis-á-vis the statutes in question. We note that by statute the discretion afforded, whether to an administrator or to a judge, is not unlimited. The Legislature has fixed a range of minimum and maximum penalties. Further, it has differentiated class “A” violations from less serious class “B” violations. Additionally, it has enumerated relevant factors to be considered by the penalty assessor in affixing the penalty within the range.
We do not know of any scheme that would allow affixing penalties with mathematical precision when dealing with a range of conduct or potential harm which nevertheless constitutes a violation of the section. We find that the statutes do not vest standardless discretion in either the administrator or the court in assessing a penalty within a prescribed range when guided by the relevant factors fixed by the Legislature. We also find there is substantial evidence to support the trial court’s determination of the amount of the penalty (absent the following issue on appeal whether this is a class “A” violation).
A troubling issue on appeal is whether the proved violations constitute class “A” violations. The violations proved are a failure to specify the kind and application of postural supports and the failure to change the care plan after the patient fell.
*Supp. 18 A class “A” violation presents either: “(1) imminent danger that death or serious harm to the patients of the long-term health care facility would result therefrom, or (2) substantial probability that death or serious physical harm to patients of the long-term health care facility would result therefrom.” (Health & Saf. Code, § 1424, subd. (c).) By way of contrast, a less serious class “B” violation (a fine of $100 to $1,000) is one which the Department determines has a direct or immediate relationship to the health, safety or security of long-term health care facility patients other than class “A” violations. (Health & Saf. Code, § 1424, subd. (d).)
In Beach v. Western Medical Enterprises, Inc., supra, 116 Cal.App.3d 153, a finding of a class “A” violation was upheld where in the course of an inspection of the health care facility by the Department, it was found that the hallway call light did not function outside four patient rooms. In that case, a patient’s call button was designed to perform three functions. It would cause a warning light to be transmitted to the main nurses’ station, it would cause an alerting sound to be transmitted to the same main nurses’ station, and finally, it would cause the hallway call light outside the room to turn on. The warning light and warning sound at the nurses’ station did function properly. There was evidence that the nurses’ station was not monitored at ¿1 times, and, therefore, a functioning hallway signal light was necessary because the court found there was a strong possibility that elderly patients might, at any time, require emergency care.
Here, there were facts concerning Patient’s actual propensity for climbing over the bed guardrails and falling which, if addressed in the care plan, might have alerted the nursing staff to more carefully monitor Patient, or to seek a physician’s guidance on other means to assure Patient’s safety when she was in bed.
The probability of serious physical harm to the elderly patient should she suffer a fall was manifest. This potential might have been minimized if the care plan focused the shift nurses to the very real danger of falls by this particular patient because of her propensity to climb out of bed without nursing assistance. We find that there is substantial evidence in the record offered by the Department’s witness, Dr. Peterson, to support the finding of a class “A” violation.
*Supp. 19 We affirm the judgment. Having done so, the appellant’s remaining issues of attorney fees under the private attorney general theory and costs on appeal are moot.
Plotkin, J., and Smith, J., concurred.

Except where otherwise indicated, section references are to the California Code of Regulations.

The documentation apparently refers to the nurse’s progress notes and daily care flow sheets maintained by the Hospital for Patient. The notes do not have an entry for every day that Patient was confined in Hospital. The notes for April 3, 4, 21, 30, and May 3, 4, 5, and 7, 1987, indicate that postural supports were required for safety and/or for protection. The flow sheets indicate that postural supports were used routinely by the day and night shifts, but were not used in the evening shift (3 p.m. to 11 p.m.) when Patient’s falls occurred.