Filed 5/31/13  Grancare v. Horton CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| GRANCARE, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MARK B. HORTON et al.,<br><br>    Defendants and Respondents. | B241363<br><br>(Los Angeles County<br>Super. Ct. No. BC450260) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Barbara M. Scheper, Judge.  Affirmed.

———

Hooper, Lundy & Bookman, Scott J. Kiepen, Matthew Clark and Katrina A. Pagonis for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Senior Assistant Attorney General, Jennifer M. Kim and Betty Chu-Fujita, Deputy Attorneys General, for Defendants and Respondents.

———

Grancare, LLC, doing business as Arbor View Rehabilitation and Wellness Center (Arbor View), appeals from the judgment entered after a bench trial in which the trial court concluded that Arbor View had committed a regulatory violation and upheld a $100,000 civil penalty. On appeal, Arbor View contends that the decision resulted from the improper application of statutory presumptions against it. We disagree and thus affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Citation*

On July 28, 2009, the Department of Public Health (Department) issued a class "AA" citation and assessed a $100,000 penalty against Arbor View, a long-term health care facility in Santa Monica.[1] According to the citation, Arbor View "failed to implement its policy and current nursing procedure [pursuant to California Code of Regulations, title 22, section 72523, subdivision (c)(2)(A) (section 72523, subdivision (c)(2)(A))] to ensure Patient . . . [,] who was fed by a gastrostomy tube[,] . . . received treatment and services to prevent the dislodged tube and fluids from going into the abdominal cavity." "Patient . . . had a percutaneous endoscopic gastrostomy tube . . . inserted on August 29, 2008. On September 8, 2008, while

---

[1] Under the classification of citations against long-term health care facilities, class "B" violations are those "that the state department determines have a direct or immediate relationship to the health, safety, or security of long-term health care facility patients or residents, other than class 'AA' or 'A' violations. Unless otherwise determined by the state department to be a class 'A' violation . . . , any violation of a patient's rights as set forth in Sections 72527 and 73523 of Title 22 of the California Code of Regulations, that is determined by the state department to cause or under circumstances likely to cause significant humiliation, indignity, anxiety, or other emotional trauma to a patient is a class 'B' violation." (Health & Saf. Code, § 1424, subd. (e).) Class "A" violations are those that "the state department determines present either (1) imminent danger that death or serious harm to the patients or residents of the long-term health care facility would result therefrom, or (2) substantial probability that death or serious physical harm to patients or residents of the long-term health care facility would result therefrom." (*Id*. at § 1424, subd. (d).) Class "AA" violations are those "that meet the criteria for a class 'A' violation and that the state department determines to have been a direct proximate cause of death of a patient or resident of a long-term health care facility." (*Id*. at § 1424, subd. (c).)

2

[residing at Arbor View], the tube was dislodged and was reinserted incorrectly by [a licensed vocational nurse]. A computed tomography scan dated September 9, 2008, indicated the tube went into the abdominal cavity and not in the stomach causing inflammation of the lining of her abdominal cavity. The patient died on October 24, 2008 and the death certificate revealed the immediate cause of death was arteriosclerotic cardiovascular disease with the significant condition of peritonitis following malpositioning of the gastrostomy tube." The Department concluded that Arbor View's violation of its policy "was a direct proximate cause of death of Patient . . . ."

2. *Arbor View's Complaint*

On November 24, 2010, after pursuing without success administrative review of the citation, Arbor View filed a complaint against the Department and Mark Horton, the director of the Department, pursuant to Health and Safety Code section 1428, subdivision (b), which provides for judicial review of class "AA" or "A" citations and gives the trial court authority to "affirm, modify, or dismiss the citation, the level of the citation, or the amount of the proposed assessment of the civil penalty." Arbor View alleged that the Department had issued the class "AA" citation "without cause or justification" and that the citation "has no basis under the provisions of Health and Safety Code [s]ection 1424, is invalid, and should be dismissed and/or reduced. In the alternative, [Arbor View] request[ed] that the citation level and/or the proposed civil penalties be reduced according to proof." Arbor View claimed that the cited violation of section 72523, subdivision (c)(2)(A), "did not occur" and that, even assuming a violation, "the incident in question did not meet the criteria for a [c]lass 'AA' citation" and that Arbor View "did what might reasonably be expected of a long-term health care facility licensee, acting under similar circumstances, to comply with the regulations."

3. *The Trial Court's Decision and Judgment*

On February 10, 2012, following a four-day bench trial, the trial court announced its tentative decision to dismiss Arbor View's complaint and uphold the citation. After the filing of a proposed statement of decision and objections thereto, the court issued a statement of decision on March 23, 2012, adhering to its tentative decision to dismiss the

3

complaint and uphold the citation. The court determined that the Department had met its burden to prove (1) a violation, (2) the violation met the criteria for the class of citation alleged and (3) the assessed penalty was appropriate. The court also concluded that Arbor View had not established in response that it did what might reasonably be expected of a facility acting under similar circumstances.

As to the violation, the trial court concluded that Arbor View had violated section 72523, subdivision (c)(2)(A). The court found that "the only policy produced to the court or the Department relevant to [the patient's] case relates to re-insertion of a G-tube when the tract is three months old or older. Accordingly it would appear that Arbor View had no policy or procedure addressing re-insertion of G-tubes less than three months old. Yet the evidence was undisputed that G-tubes frequently fall out especially when they are immature. Having no policy to address this common occurrence would therefore be a violation of the Code of Regulations. [¶] Alternatively, since the policy specifically does not discuss re-insertion of G-tubes at bedside when the tract is less than three months old, the court can infer that such a procedure is prohibited— 'expression unius est exclusio alterius.' [¶] Finally, if the policy is found to cover [the patient's] situation, it was grossly violated. The evidence established that [the licensed vocational nurse], not a registered nurse and lacking the necessary skills training, re-inserted the G-tube and did not properly verify placement. Arbor View argued that in fact [the supervising] registered nurse . . . conducted the re-insertion and verified the placement and that [the licensed vocational nurse] also verified the placement. [¶] Since these alleged actions are not recorded in [the patient's] medical records, as required, it is presumed [pursuant to Health and Safety Code section 1427] that this care was not provided. . . . The court finds that Arbor View has utterly failed to rebut this presumption since [its] witnesses lack credibility and [its] version of events is simply not plausible." (Footnote omitted.)

The court then determined that the violation warranted a class "AA" citation and that the assessed penalty was appropriate. The court based its determination on expert opinion, corroborated by the autopsy and death certificate, that improper placement of

4

the gastrostomy tube by "unqualified staff who failed to verify placement" caused the patient's death. "Either Arbor View failed to have a policy addressing a common occurrence or the policy it had was violated. If Arbor View had a policy to address [the patient's] situation or if its personnel had followed the policy it had and properly verified placement of the G-tube, [the patient] would not have died. And clearly [the patient] was among the class of persons for whose protection the regulation was adopted." "In addition to the known serious risk to the patient due to violating the patient care policy, . . . Arbor View had [28] complaints and three [c]lass B citations over the period 2006 through 2008."

As to Arbor View's contention that it had acted reasonably under the circumstances, the court disagreed. "Based on the evidence . . . , the court finds that the G-tube was re-inserted by an untrained, unqualified [licensed vocational nurse], who may or may not have communicated all the pertinent patient information to the on-call doctor; the placement was not properly verified and the patient was not monitored after the re-insertion." "Perhaps most disturbingly, there was no documentation whatsoever regarding [the patient's] condition between the end of [the licensed vocational nurse's] shift at 11:00 [p.m.] on September 8 and 5:00 [p.m.] on September 9."

The trial court entered judgment in favor of the Department and an order of dismissal of Arbor View's complaint. Arbor View filed a timely notice of appeal.

## DISCUSSION

1. *The Citation and Penalty Assessment Procedure for Long-term Health Care Facilities*

The Long-term Care, Health, Safety, and Security Act (Act) (Health & Saf. Code, § 1417 et seq.) establishes "a citation system for the imposition of prompt and effective civil sanctions against long-term health care facilities in violation of the laws and regulations of this state, and the federal laws and regulations as applicable to nursing facilities . . . relating to patient care[.]" (*Id*. at § 1417.1.) "[T]he legislation was designed to provide an inspection and reporting system to ensure that long term health care

5

facilities provide safe and effective care, and to establish a system for penalizing violations of the laws and regulations." (*Beach v. Western Medical Enterprises, Inc.* (1981) 116 Cal.App.3d 153, 161.) "The Act's provisions are designed to implement the Legislature's declared public policy objective of '[en]sur[ing] that long-term health care facilities provide the highest level of care possible.'" (*Kizer v. County of San Mateo* (1991) 53 Cal.3d 139, 143, quoting Health & Saf. Code, § 1422, subd. (a).)

"Health and Safety Code section 1424 provides that long-term health care facility licensees, including operators of nursing homes, may receive citations for violations of state and federal statutes and regulations, and that such citations may include the imposition of civil monetary penalties." (*California Association of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 288, footnote omitted.) "'While the civil penalties may have a punitive or deterrent aspect, their primary purpose is to secure obedience to statutes and regulations imposed to assure important public policy objectives. [Citations.] The focus of the Act's statutory scheme is *preventative*." (*Id*. at pp. 294-295.) "As a remedial statute, [Health and Safety Code] section 1424 is to be liberally construed on behalf of the class of persons it is designed to protect[,] . . . one of the most vulnerable segments of our population, 'nursing care patients . . . who are already disabled by age and infirmity,' and hence in need of the safeguards provided by state enforcement of patient care standards. [Citations.]" (*Id*. at p. 295.)

To challenge a class "AA" citation, as the Department issued in this case, the licensee, after certain administrative procedures, may file a civil action. (Health & Saf. Code, § 1428, subd. (b).) In such an action, the Department must prove by a preponderance of the evidence that (1) the alleged violation did occur, (2) the alleged violation met the criteria for the class of citation alleged, and (3) the assessed penalty was appropriate. (*Id*. at § 1428, subd. (e).) "The [D]epartment shall also have the burden of establishing by a preponderance of the evidence that the assessment of a civil penalty should be upheld." (*Ibid*.) Regarding causation, the Department must prove: "(1) The violation was a direct proximate cause of death of a patient or resident"; "(2) The death resulted from an occurrence of a nature that the regulation was designed to prevent";

6

and "(3) The patient or resident suffering the death was among the class of persons for whose protection the regulation was adopted." (*Id*. at § 1424, subd. (c).) "If the . . . [D]epartment meets this burden of proof, the licensee shall have the burden of proving that the licensee did what might reasonably be expected of a long-term health care facility licensee, acting under similar circumstances, to comply with the regulation. If the licensee sustains this burden, then the citation shall be dismissed." (*Ibid*.) "When the administration of medications, treatments, or other care is not recorded, as required by law, in the health care record for a patient of a long-term health care facility, it shall be presumed that the required medication, treatment, or care has not been provided. (*Id*. at § 1427, subd. (a).) "The presumption . . . may be rebutted by a licensee only upon a showing of a preponderance of the evidence." (*Id*. at § 1427, subd. (b).)

In the event the Department meets its burden of proof and the licensee fails in response to demonstrate reasonable conduct, the trial court evaluates the amount of the civil penalty based on "all relevant facts . . . , including, but not limited to, . . . : [¶] (1) The probability and severity of the risk that the violation presents to the patient's or resident's mental and physical condition. [¶] (2) The patient's or resident's medical condition. [¶] (3) The patient's or resident's mental condition and his or her history of mental disability or disorder. [¶] (4) The good faith efforts exercised by the facility to prevent the violation from occurring. [¶] (5) The licensee's history of compliance with regulations." (Health & Saf. Code, § 1424, subd. (a).)

2.      *The Citation and Penalty Assessed Against Arbor View*

In this case, the Department cited Arbor View for a violation of section 72523, subdivision (c)(2)(A), which provides that "[e]ach facility shall establish and implement policies and procedures, including but not limited to" "[n]ursing services policies and procedures[,] which include" "[a] current nursing procedure manual." The trial court upheld the citation on three alternative grounds: (1) Arbor View had no policy in its nursing procedure manual for reinsertion of a gastrostomy tube in place for less than three months; (2) Arbor View's policy for reinsertion of a gastrostomy tube in place for more than three months, with the absence of a policy for reinsertion of a gastrostomy tube

7

in place for less than three months, by implication meant that nurses were prohibited from reinserting a gastrostomy tube in place for less than three months; and (3) even if Arbor View could be viewed as having a policy for reinsertion of a gastrostomy tube in place for less than three months, it failed to implement that policy because a licensed vocational nurse without the requisite training or experience reinserted the patient's gastrostomy tube and any further actions alleged by Arbor View to have been taken were not recorded in the patient's record and thus presumed to not have occurred. Arbor View contends that none of these alternative grounds supports the citation and that, even if a violation were established, the Department failed to prove a causal link between the violation and the patient's death. We disagree.

With respect to reinsertion of gastrostomy tubes, Arbor View's policy provided that "[g]astrointestinal tubes are changed/reinserted, per physician's order, in residents with established tracts (in place 3 months or more) in order to maintain patency for nutritional maintenance." "A licensed nurse performs this procedure only after attending an educational program for licensed nurse[s] with skills validation and permitted by state specific nurse practice act." Verification of proper gastrostomy tube position must be performed "after initially placing the tube[,]" "at least every 4-6 hours for continuous feeding" and "before accessing tube for feeding, medications, or hydration." Tube position must be verified by a combination of three methods, consisting of physical assessment, aspiration of gastric contents, pH testing of gastric contents, auscultation and radiologic confirmation. "If unsure, always contact the physician to confirm by radiography (x-ray) or fluoroscopy." The nurse must document the "tube type, size and amount of cc's water/saline inserted in balloon," the "insertion date and time," the "removal date and time, and" the "condition of stoma site/surrounding skin."[2]

According to the evidence, as the trial court found, this policy was not implemented in the reinsertion of the gastrostomy tube for the patient at issue in the citation. The documentation in the patient's medical record from Arbor View

_____

[2]    Arbor View does not contend that its policy with respect to reinsertion of gastrostomy tubes exceeded the minimum regulatory requirements.

8

regarding reinsertion of the gastrostomy tube was written by a licensed vocational nurse, who reported: "Placed call to M.D. and spoke with [doctor] who gave new order to reinsert new gastrostomy tube, 20 french. Placement of G-tube checked and verified." No evidence indicated that the licensed vocational nurse had "attend[ed] an educational program for licensed nurse[s] with skills validation and permitted by state specific nurse practice act[,]" as required by Arbor View's policy, and thus possessed the required skills to reinsert a gastrostomy tube, much less one in place for only 10 days. At trial, the licensed vocational nurse testified that, at the time the patient's 10-day-old gastrostomy tube was reinserted, she had never seen one of her nursing supervisors reinsert a 10-day-old tube. She also did not recall whether she knew a clinical distinction existed between a new gastrostomy tube in place for only 10 days and an established tube in place for three months or more. She also was not aware that Arbor View's policy required three verification methods and further did not know that the original gastrostomy tube was two millimeters smaller than the one reinserted at Arbor View. And, according to expert testimony produced by the Department, the amount of tube feeds found in the patient's peritoneum indicated that placement of the gastrostomy tube was not checked and verified in the 16 hours after reinsertion of the tube upon her receipt of medication and food through the tube. As a result, Arbor View violated its policy by having unqualified personnel reinsert the tube and by giving the patient food and medicine through the tube in the 16 hours after reinsertion without checking and verifying its placement.

Arbor View contends that the trial court found a violation by misapplying the presumption in Health and Safety Code section 1427, subdivision (a), which allegedly resulted in the improper shifting of the Department's burden of proof. That contention lacks merit. The presumption in Health and Safety Code section 1427, subdivision (a), applies absent the recording of treatment or other care as required by law. As noted, despite the requirement in Arbor View's policy for checking and verification of gastrostomy tube "at least every 4-6 hours for continuous feeding" and "before accessing tube for feeding, medications, or hydration[,]" no documentation in the patient's medical

9

record indicated such checking and verification was performed in the 16 hours after reinsertion of the tube before the patient was transferred to the emergency room and the displaced tube was discovered. In addition, although a registered nurse from Arbor View testified that he, rather than the licensed vocational nurse, reinserted the gastrostomy tube, his involvement was not documented in the patient's medical record.[3] And he conceded that he did not record his involvement, even though he was aware the presumption in Health and Safety Code section 1427, subdivision (a), applied when treatment is not documented in a patient's medical record. Based on the absence of documentation in the patient's medical record, the court justifiably applied the presumption to conclude Arbor View had not provided the care required by its policy as support for its finding of a violation.[4]

Given a violation, the evidence also supports the trial court's causation determination. The Department presented expert testimony that the failure to verify placement of the gastrostomy tube before accessing it led to serious complications and that the patient's death could have been prevented if the tube had been properly placed and verified or if displacement had been determined before administering food and medication through the tube. At the emergency room, tests revealed "'massive'" amounts of tube feeds in the patient's peritoneum and a dislodged gastrostomy tube. The surgical note indicated "'extensive ascites and feeds throughout the entire abdominal cavity.'" The patient had emergency surgery as a life-saving measure to ameliorate the condition. After the surgery, the patient remained in critical condition but passed away

---

[3]     The trial court also found that the registered nurse was not credible. And Arbor View did not demonstrate that the registered nurse had the skills required by its policy to reinsert a 10-day-old gastrostomy tube. He even testified that he did not know the patient's tube had been in place for only 10 days.

[4]     Because we agree with the trial court's determination of a violation based on Arbor View's failure to implement its nursing policy, we need not address whether the violation is supported by the other two alternative grounds, namely that Arbor View lacked a policy for reinsertion of a gastrostomy tube in place for less than three months and that its nursing procedure manual prohibited reinsertion of a gastrostomy tube in place for less than three months.

18 days later.  The patient's death certificate lists "peritonitis following malpositioning of gastrostomy" as a "significant condition[] contributing to death."  This evidence demonstrates that Arbor View's violation of section 72523, subdivision (c)(2)(A), requiring implementation of a nursing procedure manual, was a direct proximate cause of the patient's death and that "[t]he death resulted from an occurrence of a nature that the regulation was designed to prevent."  (See Health & Saf. Code, § 1424, subd. (c)(2).)  And the patient, a resident of Arbor View, plainly "was among the class of persons for whose protection the regulation was adopted."  (*Id*. at § 1424, subd. (c)(3).)

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to recover their costs on appeal.

NOT TO BE PUBLISHED.


ROTHSCHILD, J.

We concur:


MALLANO, P. J.


JOHNSON, J.


11