[No. F014170. Fifth Dist. Mar. 13, 1992.]

JERALD B. HOUSLEY, Plaintiff and Appellant, v.
DANIEL A. GODINEZ et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II through IV.

**COUNSEL**

Ralph C. Smith for Plaintiff and Appellant.

Aron & Newman, Murray M. Aron, John M. Newman and Leonard J. Zins for Defendants and Respondents.

**OPINION**

**MARTIN, Acting P. J.**—This personal injury action arose when a Dodge Ram pickup truck owned by defendant Randy Housley and driven by defendant Daniel A. Godinez, in which plaintiff Jerald B. Housley was riding as a passenger, collided with a land plane owned by defendant Alexander Lehman. Plaintiff sued for catastrophic injuries he allegedly received as a result of the accident. The defendants raised defenses of contributory negligence: (1) the failure of the passenger plaintiff to wear seat belts and (2) knowingly and voluntarily assuming a risk of accident by riding in the vehicle operated by defendant Godinez.

Jury trial commenced on December 6, 1989. Over plaintiff's objections, the trial court instructed the jury in the language of BAJI No. 4.31 on reasonable implied assumption of risk and Vehicle Code section 27315 as part of the "seat belt defense." On December 20, 1989, the jury returned a special verdict in favor of the plaintiff which provided that, without taking into consideration the reduction of damages due to the negligence of the plaintiff, if any, the total amount of damages sustained by the plaintiff as a proximate result of the accident amounted to $31,205.68. The verdict contained additional special findings that: (1) plaintiff's negligence contributed 30 percent; (2) Godinez's negligence contributed 47 percent; and (3) Lehman's negligence contributed 23 percent to plaintiff's injuries.

On April 4, 1990, the trial court entered a judgment on the special verdict that plaintiff recover from defendants Godinez and Randy Housley the sum of $14,666.67 and from the defendant Lehman the sum of $7,177.31. Thereafter, a motion for new trial or for additur, filed by the plaintiff, was denied by the trial judge.

Plaintiff filed a timely notice of appeal.

## FACTS

On December 18, 1986, plaintiff Jerald Housley drove to an end-of-the-season harvest barbecue at a ranch in Firebaugh owned by his brother. Approximately 20 people attended the barbecue, including plaintiff's other brother, Gilbert Housley, and the defendant, Daniel A. Godinez. Food and beverages, including wine and beer, were served for the guests' consumption.

Upon arrival but before the party began, plaintiff recruited Mr. Godinez, whom he had known for over 10 years, to drive him home that night after the party because plaintiff's eyesight was rapidly deteriorating due to eye cataracts.

Mr. Godinez testified he participated in cooking for the party and consumed approximately eight beers during a five-hour period. Plaintiff testified that he only noticed "a beer beside [Godinez]" as Godinez cooked. According to the plaintiff and his brother, Gilbert Housley, Mr. Godinez did not appear intoxicated at the party.

The party concluded around dusk and Mr. Godinez gave plaintiff a ride home. During the course of the trip, the pickup truck in which they were riding collided with defendant Lehman's land plane, which was stuck in the middle of the highway. At the time of the collision, approximately 5:15 to 5:30 p.m., it was already dark. The tractor was positioned perpendicular to traffic so that its lights, two on the front and one on the back, were not visible to Mr. Godinez.

Defendant Lehman had acquired the land plane in exchange for some work he had performed for another person. The length of the land plane is approximately 60 feet at the wheel base. There were no lights or reflectors on the land plane. Earlier on the day in question, defendant Lehman obtained the land plane, located in a field, and transported it, by pulling it with the aid of a tractor, through the dirt field, on the side of the road. In attempting to get across Road 16, the bottom of the land plane got stuck. The attempts to get the land plane unstuck from the center of the road were unsuccessful.

Mark Allen Grey, the highway patrol officer who investigated the accident, testified that when he contacted Mr. Godinez at the scene of the accident, he noticed an odor of alcohol on Godinez's breath, that his eyes were watery and bloodshot and that his speech was somewhat slurred.

Neither Godinez nor plaintiff was wearing seat belts at the time of the accident. Plaintiff testified that he did not recall seeing any seat belts in the truck, but he also testified that he usually wore seat belts only on long trips to a big town such as San Francisco. Plaintiff also testified that he had decided not to wear a seat belt on the day in question.

Mr. Godinez repaired farm equipment for the Housley brothers, and prior to the accident, he had changed the seats in the pickup truck from bench seats to bucket seats. A "kind of cooler" which could be used for storing soft drinks had been installed between the two seats. Mr. Godinez testified that he was uncertain as to whether the lap portion of the seat belts was visible and accessible on the day of the accident.

An expert witness called by the defense, Dennis Hagopian, testified regarding photographs of the pickup truck he took when he inspected the truck in January of 1987. When he inspected the vehicle, he found a functioning seat belt. Dr. Nahum, an accident reconstructionist who was also retained by defendants, testified that he examined the accident vehicle after the pictures were taken and that he found functioning seat belts for both the right and left front seats.

As a result of the accident, plaintiff sustained injuries which included broken collarbones, a laceration to his right ear and other bruises and contusions. He also claimed he suffered a subdural hematoma which caused swelling of the brain resulting in a substantial impairment of his ability to function normally.

Defense evidence produced at the trial covered the plaintiff's medical history prior to the time of the accident and disputed plaintiff's contention that the injury resulted in ongoing impairment of his ability to function normally. Lou Rienzi, a psychological examiner, testified for the defense. In 1984, prior to the time of the accident in question, plaintiff had been referred to Mr. Rienzi by the State Department of Rehabilitation for a psychological evaluation. Plaintiff was so referred due to difficulties he was experiencing in reading and writing. It was concluded that an individual test was preferable over a group test due to these difficulties. Mr. Rienzi administered a number of tests and concluded plaintiff had an overall IQ of 83. His diagnosis was one of borderline intellectual functioning, and plaintiff performed significantly below average on all of the tests.

The expert opined that plaintiff is an individual who had a history of depression prior to the accident. He also had had a kidney transplant and took prescribed medication:

"It appeared he was able to deal with those episodes of depression without having to seek out psychological assistance. [¶] What we found, or what was evident is that he required some [psychological] assistance after the accident in response to stresses going on in his life. This was not surprising or uncommon, not with individuals who have head injuries, because of the fact that they don't have some problem controlled. In this situation this man has a problem with cognitive skills and cognitive ability to think about and process information regarding the problem."

Plaintiff testified that he dropped out of school in the ninth grade. Most of his life he worked in farming, hauling hay, and as a farm mechanic. In 1980 he began to have problems with his kidneys, migraine headaches and numbness in his legs. Because of these problems he was unable to work for much of the time between 1980 and 1984.

Treatment at Sansum Medical Clinic in Santa Barbara revealed the plaintiff suffered from kidney failure and high blood pressure. He received treatment for both until 1984 when he had a kidney transplant at the University of California San Francisco. Medications continued and he maintained an exercise program. He claimed to be "feeling good" in 1986 prior to the accident in question. However, he never returned to work after the surgery.

On January 2, 1987, neurosurgeon John Thomas Bonner examined plaintiff at Community Hospital. He performed a "CAT" scan which revealed a subdural hematoma. On the same day, Dr. Bonner performed surgery consisting of a "burrhole craniotomy." Plaintiff was discharged January 6, 1987. Dr. Bonner continued to see plaintiff until May 4, 1987. As of the last visit, plaintiff was "doing quite well, he had no headaches, and his only problem was in the low back, and he pointed to the lateral lumbar area."

Warden B. Sisson, a neurologist who examined plaintiff at the request of defendants, testified that any complaints which plaintiff had at the time of trial were more likely to be the result of his prolonged and excessive use of alcohol rather than the accident in question.

## DISCUSSION

### I. Jury Instruction on Vehicle Code Section 27315

Plaintiff contends that California's mandatory seat belt legislation, i.e., Vehicle Code section 27315, was not intended for use in civil actions.[1]

Section 27315 provides in pertinent part:

---

[1]All references to section 27315 are to that section as it appears in the Vehicle Code.

"(a) The Legislature finds that a mandatory seatbelt law will contribute to reducing highway deaths and injuries by encouraging greater usage of existing manual seatbelts, that automatic crash protection systems which require no action by vehicle occupants offer the best hope of reducing deaths and injuries, and that encouraging the use of manual safety belts is only a partial remedy for addressing this major cause of death and injury. The Legislature declares that the enactment of this section is intended to be compatible with support for federal safety standards requiring automatic crash protection systems and should not be used in any manner to rescind federal requirements for installation of automatic restraints in new cars.

"· . . . . . . . . . . . . . . . . . . . . . .

"(e) No person 16 years of age or over shall be a passenger in a private passenger motor vehicle on a highway unless that person is restrained by a safety belt.

"(f) Every owner of a private passenger motor vehicle . . . operated on a highway shall maintain safety belts in good working order for the use of the occupants of the vehicle.

"· . . . . . . . . . . . . . . . . . . . . . .

"(h) . . . [A]ny violation of subdivision (d), (e), or (f) is an infraction punishable by a fine, including all penalty assessments and court costs imposed on the convicted person, of not more than twenty dollars ($20) for a first offense. . . .

"· . . . . . . . . . . . . . . . . . . . . . .

"*(j) In any civil action, a violation of subdivision (d), (e), or (f) or information of a violation of subdivision (h) shall not establish negligence as a matter of law or negligence per se for comparative fault purposes, but negligence may be proven as a fact without regard to the violation.*" (Italics added.)

The burden is on the defendants to prove whether in the circumstances of the case, plaintiffs in the exercise of ordinary care should have used the seat belts available to them and what injuries plaintiffs would have sustained, according to expert testimony, if the seat belts had been used. (*Franklin* v. *Gibson* (1982) 138 Cal.App.3d 340, 343 [188 Cal.Rptr. 23]; *Truman* v. *Vargas* (1969) 275 Cal.App.2d 976, 983 [80 Cal.Rptr. 373].)

Plaintiff contends that subdivision (j) of section 27315 as quoted above establishes that the California Legislature did not intend to allow said section

to affect civil suits; he argues that the plain language of the statute indicates the Legislature's intent that it only be used in criminal matters.

Plaintiff argues that to allow use of section 27315 to establish the "seat belt defense" would create the anomalous result that plaintiffs injured in cars with no available seat belts would have their recovery reduced while occupants of certain vehicles exempt from section 27315 would not have their recoveries reduced even if the occupants should have worn available seat belts. The statute does exempt certain vehicles and plaintiffs falling into those exemptions would not have their recoveries reduced even if the occupants should have worn available seat belts. Thus, plaintiff urges us to conclude that the unreasonable result caused by this statutory interpretation is sufficient reason for rejecting that interpretation, citing *United States* v. *Bayko* (1st Cir. 1985) 774 F.2d 516, 522.

The legislative history of section 27315 is silent on the precise question raised in this litigation, i.e., interpretation or intent of the Legislature as to subdivision (j). Initially, Assembly Bill No. 27, sponsored by Willie Brown, Speaker of the Assembly, did not contain the provision now set forth in subdivision (j). Similar bills proposed in the state Senate by Senator Paul Carpenter (Sen. Bill No. 12) and Senator John Foran (Sen. Bill No. 50) specified that violations of the seat belt law would not establish negligence as a matter of law in any civil action. (Legislative Analysis of Assem. Bill No. 27 by Cal. Highway Patrol (Jan. 3, 1985) p. 2.) The forerunner of subdivision (j) appeared in the March 7, 1985, amended version of Assembly Bill No. 27. In contrast, the legislation suggested by the United States Department of Transportation stated that a violation "may be introduced into evidence to mitigate damages with respect to any person who is involved in a passenger car accident . . . who seeks . . . to recover damages for injuries resulting from such accident." (See letter from Elizabeth Dole, Sect. of the Dept. of Transportation (Aug. 5, 1985).)

██ While subdivision (j) of section 27315 precludes defense arguments that a violation of the statute constitutes "negligence as a matter of law or negligence per se," nothing in the statute prohibits a jury from knowing and considering its very existence when determining the reasonableness of driving without a seat belt. Thus, the Legislature did not use language in the section which would totally ban use of the seat belt statute as a factor in determining negligence. ██ It is well established in California case law that juries may be instructed upon criminal statutes even when the statute

itself does not establish a presumption of negligence under Evidence Code section 669, California's codification of the doctrine of "negligence per se."[2]

In *Vallas* v. *City of Chula Vista* (1976) 56 Cal.App.3d 382 [128 Cal.Rptr. 469], plaintiff attempted to establish a police officer's negligence by showing that his conduct violated departmental regulations. The trial court refused to instruct the jury that breach of the regulations was negligence per se because it considered the regulations no more than employer "safety rules," rather than a public entity's official enactments. (*Id.* at pp. 386-387.) The court did inform the jury, however, as to the content of the regulations, with instructions to give them whatever weight it considered appropriate. (*Id.* at p. 386.) The Court of Appeal affirmed. (*Id.* at p. 388; see also *Straughter* v. *State of California* (1976) 89 Cal.App.3d 102, 110 [152 Cal.Rptr. 147] [in which state highway maintenance manual requirements are evidence of the care required of a defendant under the circumstances].)

■ The plain meaning of section 27315 is further supported by its second clause, providing that "negligence may be proven as a fact without regard to the violation." Permitting the proof of negligence "as a fact" has a well-established meaning: proving that the party in question acted unreasonably in the circumstances in failing to use a seat belt. Thus, section 27315, subdivision (j) plainly contemplated such an issue being fully litigated as a question of fact, with the jury free to consider pertinent statutes along with any other relevant factors.

■ The root purpose of the seat belt statute, to encourage greater usage of existing manual seat belts for the purpose of public safety, is a compelling state interest.

"The increased usage of existing seat belts offers the simplest, quickest, and the least expensive means of reducing traffic accident casualties in the State [of California]. Seat belts have been proven effective in virtually all types of traffic collisions and exist in about 99 percent of the vehicles in the State, yet voluntary usage in the State is only 17 percent . . . . If actively enforced, the proposed statute could raise seat belt usage to an estimated 60 percent. The reduction in accident casualties would be considerably less, but

---

[2]Evidence Code section 669 provides that:

"(a) The failure of a person to exercise due care is presumed if:

"(1) He violated a statute, ordinance, or regulation of a public entity;

"(2) The violation proximately caused death or injury to person or property;

"(3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and

"(4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted."

could still be in the 20-30 percent range." (Enrolled Bill Rep. from the Cal. Highway Patrol regarding Assem. Bill No. 27, authored by Willie Brown (Sept. 16, 1985) p. 2.)

We must agree with defendants that permitting jury instructions on the seat belt statute helps educate and convince the parties, the jury, the spectators and even those who only read about the litigation in the newspaper of the value of seat belts in preventing serious injuries. It underscores the value of seat belts in preventing serious injuries by warning that a jury may reduce an injured party's recovery for injuries that would have been avoided by using a seat belt.

Plaintiff's argument that the Legislature intended to absolutely forbid instruction on the seat belt statute in civil trials is not persuasive since subdivision (j) of section 27315 when considered as a whole, including the last modifying phrase, fails to demonstrate a clear intention to do so.

Subdivision (j) of section 27315 reads very differently from statutes such as Labor Code section 6304.5 which do impose an absolute prohibition. Labor Code section 6304.5 provides, in pertinent part, that no statute in division 5, entitled "Safety in Employment," "shall have *any application to, . . . be considered in, nor be admissible into, evidence in any [third party] personal injury or wrongful death action . . . .*" (Italics added.) This section has been construed to comprehensively ban the use of safety orders in third party actions, including their use to establish negligence per se, their admission into evidence, and even any reference to them during examination of witnesses. (See, e.g., *Spencer* v. *G. A. MacDonald Constr. Co.* (1976) 63 Cal.App.3d 836, 857 [134 Cal.Rptr. 78].) Had the Legislature intended to create a comparable bar to the use of the seat belt statute in civil proceedings, it could have done so effectively and quite simply.

The language of section 27315, subdivision (j) also contrasts dramatically with statutes like Business and Professions Code section 25602 in which the Legislature expressly overruled existing common law concerning tort liability arising out of the sale of liquor to an intoxicated person, and stated the rule of proximate cause to apply in future actions.[3] Section 27315, subdivision (j), on the other hand, makes no mention of the preexisting case law on the seat belt defense. We are to presume the Legislature was aware of it.

---

[3] Business and Professions Code section 25602 provides in pertinent part:

"(c) The Legislature hereby declares that this section shall be interpreted so that the holdings in cases such as Vesely v. Sager (5 Cal.3d 153), Bernhard v. Harrah's Club (16 Cal.3d 313) and Coulter v. Superior Court (21 Cal.3d 144) be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages rather than the serving of alcoholic beverages as the proximate cause of injuries inflicted upon another by an intoxicated person."

Thus, we are satisfied these points of contrast demonstrate that it was the Legislature's plain intent to allow section 27315 to play the traditional role of a statute in tort litigation, a factor to be considered by the jury in determining the reasonableness of the conduct in question. (See Leonard, *The Application of Criminal Legislation to Negligence Cases: A Reexamination* (1983) 23 Santa Clara L.Rev. 427, 453-457, 462-463.)

■ We conclude the Legislature intended section 27315, subdivision (j) only to preclude the automatic and invariable reduction of awards to plaintiffs injured while not wearing a seat belt. This construction is consistent with the language of the legislation. It permits the civil trial courts to instruct on the existence of the seat belt statute in appropriate cases, while allowing the jury to decide what weight, if any, to give the statute in determining the standard of reasonable care.

Moreover, even were we to find that a reading of section 27315 to the jury was improper, in the instant case the error, if any, was harmless. The court read an instruction requested by the defendants which directly states the elements of the "seat belt defense" as follows:

"The Defendants have raised the seat belt defense in this case. First, you must decide whether in the exercise of ordinary care, the Plaintiff should have used seat belts, *if available to him.* Second you must determine with expert testimony the nature of injuries and damages Plaintiff would have sustained if he had used seat belts." (Italics added.) This instruction fully complies with the requirements of *Franklin* v. *Gibson, supra,* 138 Cal.App.3d 340. Thus, the jury was properly instructed that it was for their determination as to whether plaintiff had exercised ordinary care and if the seat belts were available to him. We must presume that the jury understood and followed the instructions given. (*People* v. *Archer* (1989) 215 Cal.App.3d 197, 204 [263 Cal.Rptr. 486].)

*II.-IV.\**

. . . . . . . . . . . . . . . . . . . . . . . . .

---

\*See footnote, *ante,* page 737.

## DISPOSITION

The judgment is affirmed. Defendants are awarded costs of appeal.

Ardaiz, J., and Harris, J., concurred.