[Nos. C030074, C030733. Third Dist. May 1, 2000.]

Conservatorship of the Person and Estate of REBA GREGORY. CHRISTINE SANDAHL, as Conservator, etc., Plaintiff and Appellant, v. BEVERLY ENTERPRISES, INC., et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, the introduction (first six paragraphs) and part I-B (Jury Instruction) of this opinion are certified for publication.

COUNSEL

Eisen & Johnston, Jay-Allen Eisen; Luce, Forward, Hamilton & Scripps, Christopher J. Healey; Law Offices of Michael D. Thamer and Michael D. Thamer for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Kevin S. Rosen, Rory M. Hernandez, David Pendarvis, Theodore B. Olson, Theodore J. Boutrous, Jr., and Nancy E. Hudgins for Defendants and Appellants.

OPINION

CALLAHAN, J.—On January 31, 1995, 66-year-old plaintiff Reba Gregory broke her hip and shoulder in a fall at Beverly Manor, a nursing home in Yreka. Gregory, through her daughter and conservator, Christine Sandahl, sued defendants Beverly Enterprises, Inc. (BEI), Beverly Enterprises-California, Inc., Beverly Health and Rehabilitation Services, Inc. (BHRS), and Chuck Williams for elder abuse under the Elder Abuse and Dependent Adult

Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.) (Elder Abuse Act), negligence, and fraud. Her complaint sought compensatory damages, punitive damages, and attorney fees.[1]

The jury returned special verdicts in favor of Gregory on all three causes of action, and found defendants acted with malice, oppression, or fraud with respect to the claims of elder abuse and fraud. It awarded Gregory $365,580.71 in compensatory damages, and $94,720,450 in punitive damages.

On defendants' motion, the court conditionally granted a new trial unless Gregory accepted reduction of compensatory damages to $124,480.57, and reduction of punitive damages to $3 million. Gregory accepted the remittitur. The court then awarded Gregory attorney fees in the amount of $517,927.50 under the Elder Abuse Act.

In these consolidated appeals, defendants appeal: (1) in case No. C030074 from the judgment on special verdict, and the court's rulings on their motions for partial judgment notwithstanding the verdict and for new trial; and (2) in case No. C030733 from the court's ruling on Gregory's application for attorney fees and costs. Gregory cross-appeals on the issue of attorney fees and costs.

On their part, defendants argue: (1) they are entitled to judgment as a matter of law, or a new trial, on the elder abuse claim; (2) they are entitled to judgment as a matter of law on the fraud claim; (3) there is no clear and convincing evidence of malice, oppression, or fraud to support punitive damages; (4) the punitive damage award is excessive under state and federal law; (5) jury misconduct, prejudicial media coverage, evidentiary and instructional errors, and cumulative error require a new trial; and (6) Gregory is not entitled to attorney fees under any theory. On cross-appeal, Gregory contends: (1) she is entitled to either statutory or contractual attorney fees; and (2) the court erred in denying compensation for the cost of paralegals and other litigation support.

With respect to defendants' appeal in case No. C030074, we affirm the judgment. In Gregory's cross-appeal in case No. C030733, we reverse the order denying compensation for paralegal fees, and remand the matter for

---

[1]We will refer to the corporate defendants collectively as Beverly. The court granted the motion for *nonsuit filed* by defendant Beverly Enterprises-California, Inc., at the close of Gregory's case, and that entity is not a party to this appeal.

proceedings consistent with this opinion. In all other respects, the order is affirmed.

FACTUAL BACKGROUND*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISCUSSION

I

*Elder Abuse**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

A.  *The Elder Abuse Act:**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

B.  *Jury Instructions:*

Following a discussion regarding jury instructions at the end of the trial, defendants placed on the record their general objection to "any instruction that was not proposed by the defendants." Earlier in the discussion, they specifically objected to the use of state and federal regulations to define the standard of nursing home care. Citing *Klein v. Bia Hotel Corp.* (1996) 41 Cal.App.4th 1133 [49 Cal.Rptr.2d 60], a case alleging negligence per se based on violation of regulations found in title 22 of the California Code of Regulations, the court denied defendants' request to strike those instructions.

The court proceeded to instruct the jury in the language of Welfare and Institutions Code section 15610.07 that "[a]buse of an elder or dependent adult means physical abuse, neglect, or other treatment with resulting physical harm or pain or mental suffering, or the deprivation by a custodian of goods and services which are necessary to avoid physical harm or mental suffering." It then described how "[p]atients of skilled nursing facilities shall be treated and cared for" by reading portions of state statutes, and state and federal regulations governing patients' rights and patient care in skilled nursing facilities. (Health & Saf. Code, §§ 100275, subd. (a) [formerly § 208, subd. (a)], 1275, 1599.1; Cal. Code Regs., tit. 22, §§ 72315, 72528; 42 C.F.R. §§ 483.10, 483.15, 483.25 (1999) [applicable to skilled nursing facilities participating in Medicaid].)

*See footnote, *ante*, page 514.

The court also instructed the jury that "[i]n considering the term . . . reckless neglect . . . the term 'recklessness' requires that the defendant have knowledge of a high degree of probability that dangerous consequences will result from his or her conduct and acts with deliberate disregard of that probability or with a conscious disregard of the probable consequences. [¶] Recklessness requires conduct more culpable than mere negligence."

### 1. *Definitions of "Physical Abuse" and "Neglect"*:

■ "Generally speaking if it appears that error in giving an improper instruction was likely to mislead the jury and thus to become a factor in its verdict, it is prejudicial and ground for reversal." (*Henderson v. Harnischfeger Corp.* (1974) 12 Cal.3d 663, 670 [117 Cal.Rptr. 1, 527 P.2d 353].)

■ Defendants argue the instruction on elder abuse based on Welfare and Institutions Code section 15610.07 was incorrect as a matter of law because it omitted the statutory definitions of "physical abuse" and "neglect" contained in Welfare and Institutions Code sections 15610.57 and 15610.63.[8] They assert this erroneous instruction, combined with vague instructions based on administrative regulations, allowed the jury to transform a simple negligence case involving Reba Gregory into a referendum on anything that happened to residents of Beverly Manor at any point in time. Defendants also say the instructions left the jury with the impression elder abuse equaled negligence.

■ ▪ "Instructions in the language of an applicable *statute* are properly given." (7 Witkin, Cal. Procedure (4th ed. 1997) Trial, § 280, p. 326.) Where, as here, "the court gives an instruction correct in law, but the party complains that it is too general, lacks clarity, or is incomplete, he must request *the additional or qualifying instruction in order to have the error reviewed*." (*id.*, § 272, pp. 318-319, italics in original and added; *Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1534-1535 [254 Cal.Rptr. 492].) ■ Defendants' failure to specifically request that the jury be

---

[8]There being no claim Gregory was physically assaulted within the meaning of Welfare and Institutions Code section 15610.63, we focus on defendants' argument the court erred in failing to give the statutory definition of "neglect." In 1995, Welfare and Institutions Code section 15610.57 read:

" 'Neglect' means the negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care which a reasonable person in like position would exercise. Neglect includes, *but is not limited to*, all of the following:

"(a) Failure to assist in personal hygiene, or in the provision of food, clothing, or shelter.

"(b) Failure to provide medical care for physical and mental health needs. No person shall be deemed neglected or abused for the sole reason that he or she voluntarily relies on treatment by spiritual means through prayer alone in lieu of medical treatment.

"(c) Failure to protect from health and safety hazards.

"(d) Failure to prevent malnutrition." (Stats. 1994, ch. 594, § 3, italics added.)

instructed in accordance with Welfare and Institutions Code sections 15610.57 and 15610.63 waives the issue on appeal. (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 948 [160 Cal.Rptr. 141, 603 P.2d 58], disapproved on other grounds in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 574, fn. 4 [88 Cal.Rptr.2d 19, 981 P.2d 944].) However, even assuming defendants properly raised the issue of instructional error, we conclude the instructions were correct and did not mislead the jury.

We begin with the observation that the statutory definition of neglect set forth in the first sentence of Welfare and Institutions Code section 15610.57 is substantially the same as the ordinary definition of neglect. Defendants would gain no particular advantage from an instruction that conveyed the layperson's understanding of the term. In this case, the administrative regulations incorporated into the instructions on elder abuse included numerous, specific examples of what constituted neglect in the treatment and care of nursing home patients. Each of the examples of neglect listed in Welfare and Institutions Code section 15610.57 is included in the instructions read to the jury. Contrary to defendants' characterization of the regulations as vague, the instructions formulated by the court provided concrete examples which amplified the instruction on elder abuse based on Welfare and Institutions Code section 15610.07. Accordingly, we reject defendants' claim the elder abuse instructions misled the jury and prejudiced their case.

As we explained, the court also instructed the jury on the concept of recklessness as it applied to "reckless neglect." Contrary to defendants' claim the jury was misled into believing elder abuse was equivalent to negligence, these instructions emphasized that "[i]n considering the term . . . reckless neglect . . . the term 'recklessness' requires that the defendant have knowledge of a high degree of probability that dangerous consequences will result from his or her conduct and acts with deliberate disregard of that probability or with a conscious disregard of the probable consequences. [¶] Recklessness requires conduct more culpable than mere negligence."

Defendants suggest the language of Welfare and Institutions Code section 15610.07 is similar to statutory provisions enacted at the same time to govern reporting of suspected elder abuse, not liability. We conclude there is no basis for the claim the statutory definition of "abuse of an elder or dependent adult" is inapplicable to the case before us. Welfare and Institutions Code section 15610, added in 1994, expressly states that "[t]he definitions contained in this article shall govern the construction of this chapter, unless the context requires otherwise." (Stats. 1994, ch. 594, § 3.) The "chapter," that is, chapter 11 of the Elder Abuse Act, includes articles 4 and 8.5 which address both reporting requirements and civil

liability.[9] ▮ Our conclusion is consistent with the general rule that "[t]he definition of a term in the definitional section of a statute controls the construction of that term wherever it appears throughout the statute." (1A Sutherland Statutory Construction (5th ed. 1993) § 20.08, p. 90.)

## 2. *Instructions Based on Administrative Regulations:*

▮ The more interesting question is whether the court erred in reading the jury instructions based on state and federal regulations. Defendants argue that although the regulations have nothing to do with the Elder Abuse Act, and involve only the regulation of federal Medicaid payments, Gregory effectively used them to create a private cause of action. They also complain the instructions were too vague to provide meaningful guidance to the jury. Defendants maintain that "by convincing the trial court to instruct the jury not from the Elder Abuse Act itself, but instead from language contained in vague and aspirational regulations, [Gregory] succeeded in having the jury find elder abuse based on standards resembling negligence or less." We conclude the instructions were proper.

Defendants are correct that ". . . an administrative agency cannot independently impose a duty of care if that authority has not been properly delegated to the agency by the Legislature." (*California Service Station etc. Assn. v. American Home Assurance Co.* (1998) 62 Cal.App.4th 1166, 1175-1176 [73 Cal.Rptr.2d 182].) Unlike the regulations involved in the cited case, the regulations at issue here were authorized by federal and state legislation. (42 U.S.C. §§ 1395i-3(d)(4) & (f)(1), 1396r(d)(4) & (f)(1); Health & Saf. Code, § 1275.) Moreover, the question before us is not whether violation of these regulations gives rise to a private right of action, but whether the duly authorized regulations can be used to describe the care required under an *existing* statutory right of action for elder abuse.

"In charging the jury the Court may state to them all matters of law which it thinks necessary for their information in giving their verdict . . . ." (Code Civ. Proc., § 608.) ▮ "Although a party is entitled to instructions on his theory of the case, if reasonably supported by the pleadings and the evidence, instructions must be properly selected and framed. The trial court is not required to give instructions which are not correct statements of the law or are incomplete or misleading." (*Levy-Zentner Co. v. Southern Pac. Transportation Co.* (1977) 74 Cal.App.3d 762, 782 [142 Cal.Rptr. 1].)

---

[9]Defendants are incorrect that Welfare and Institutions Code section 15657 was enacted in 1997. As we explained, the Legislature added it to the Elder Abuse Act in 1991. (Stats. 1991, ch. 774, § 3, p. 3477.) The 1997 amendment simply updated the numbering of code sections referenced in the earlier version. (Stats. 1997, ch. 724, § 38.)

Sources of law for jury instructions include statutes, court opinions, treatises, hornbooks, legal encyclopedias, digests, and form books. (2 Cal. Trial Practice: Civil Procedure During Trial (Cont.Ed.Bar 1997) § 20.25, p. 1225; 7 Witkin, Cal. Procedure, *supra*, Trial, §§ 280-282, 294, pp. 326-328, 341-342.) We find no authority to suggest a party may not base instructions on relevant state or federal regulations in the proper case. Like statutes, applicable regulations are a "factor to be considered by the jury in determining the reasonableness of the conduct in question." (*Housley v. Godinez* (1992) 4 Cal.App.4th 737, 747 [6 Cal.Rptr.2d 111] [Veh. Code, § 27315, requiring the use of seat belts, was properly considered by the jury deciding whether the driver exercised due care, although the statute could not be used to establish presumptive negligence under Evid. Code, § 669]; see also *People v. Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 529-530 [206 Cal.Rptr. 164, 53 A.L.R.4th 661] (*Casa Blanca*), disapproved on other grounds in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 184 [83 Cal.Rptr.2d 548, 973 P.2d 527] (*Cel-Tech*) [violation of Cal. Code Regs., tit. 22, supported civil action against a nursing home for unfair practices under Bus. & Prof. Code, § 17200].)[10]

Welfare and Institutions Code section 15657 established a civil remedy for elder abuse apart from the regulations at issue. Gregory alleged wrongful infliction of personal injury resulting from defendants' reckless failure to exercise due care. Defendants concede the regulations were relevant to government enforcement actions. We agree with the court that they were designed to protect nursing home residents by defining the care that was due. Given the variety of sources from which parties may draw instructions—so long as the instructions are correct statements of law—we conclude the court did not err in using the regulations to assist the jury in determining whether defendants' conduct involved physical abuse or neglect, or recklessness, oppression, fraud, or malice within the meaning of the Elder Abuse Act. Defendants offered no alternative guidance in this regard.

We also reject defendants' claim the instructions based on state and federal regulations were too vague to provide meaningful guidance to the jury. A statute or regulation is not void for uncertainty in an enforcement action if its meaning can be objectively ascertained by any reasonable and

---

[10]In their reply brief, counsel for defendants mischaracterize *Cel-Tech*, *supra*, 20 Cal.4th at pages 184-185, as criticizing "these regulations" as impermissibly vague. They suggest that "[t]he *Cel-Tech* decision and its criticism of *Casa Blanca* completely undercuts plaintiff's arguments in this case and makes clear that liability cannot be imposed based upon the broad and vaguely-worded regulations which comprised the instructions on elder abuse." *Cel-Tech* criticized only *Casa Blanca*'s definition of "unfair business practice." (*Casa Blanca*, *supra*, 159 Cal.App.3d at p. 530.)

practical construction. (*Lackner v. St. Joseph Convalescent Hospital, Inc.* (1980) 106 Cal.App.3d 542, 551 [165 Cal.Rptr. 198]; see *Casa Blanca, supra*, 159 Cal.App.3d at pp. 528-529 [the term "clean and sanitary" was not too vague to be understood by a jury where the facility was so filthy and pest ridden that maggots were observed in patients' body cavities].) Moreover, a statute or regulation may be made specific "by reference to a standard of practice in the particular profession [citation] or 'by the common knowledge of members of the particular vocation . . . .'" (*Beach v. Western Medical Enterprises, Inc.* (1981) 116 Cal.App.3d 153, 162 [171 Cal.Rptr. 846]; *Perea v. Fales* (1974) 39 Cal.App.3d 939, 942 [114 Cal.Rptr. 808].) Here the jury heard testimony describing how nursing home professionals construed and applied the federal and state regulatory standards regarding sufficient staff.

Defendants cite as representative two regulations out of seven pages of instructions on how "[p]atients of skilled nursing facilities shall be treated and cared for." Omitted from defendants' brief were the following specific regulations relevant to key issues in this case:

"[T]he facility shall employ an adequate number of qualified personnel to carry out all of the functions of the facility."

"[T]he facility shall be clean, sanitary, and in good repair at all times."

"[E]ach patient shall be given care to prevent formation and progression of decubiti, contractures, and deformities. Such care shall include changing position of bedfast and chairfast patients with preventive skin care in accordance with the needs of the patient, . . ."

"[I]t is not the fair test in considering whether the jury has been properly instructed in a given case, to take into consideration excerpts from a particular instruction, or a single instruction." (*Peters v. Southern Pacific Co.* (1911) 160 Cal. 48, 69 [116 P. 400].) Considering the instructions as a whole, as we must (7 Witkin, Cal. Procedure, *supra*, Trial, § 328, pp. 372-373), we conclude the instructions drawn from state and federal regulations were not impermissibly vague.[11]

C. *Sufficiency of the Evidence of Elder Abuse:**

. . . . . . . . . . . . . . . . . . . . . . . .

II-V*

. . . . . . . . . . . . . . . . . . . . . . . .

---

[11]We deny Gregory's request for judicial notice of the 1998 general accounting office report on California nursing homes.

*See footnote, *ante*, page 514.

## DISPOSITION

With respect to defendants' appeal in case No. C030074, the judgment is affirmed. With respect to Gregory's appeal in case No. C030733, the order denying compensation for paralegal fees is reversed, and the matter remanded for proceedings consistent with this opinion. In all other respects, the order is affirmed. Plaintiff shall receive costs on appeal in case Nos. C030074 and C030733.

Scotland, P. J., and Blease, J., concurred.

A petition for a rehearing was denied May 30, 2000, and the nonpublished portion of the opinion was modified. The petition of defendants and appellants for review by the Supreme Court was denied August 23, 2000.