Filed 1/24/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| FUJIFILM CORPORATION, | B243770 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC436748) |
| v. | |
| CINDY YANG, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. James R. Dunn, Judge. Affirmed.

Burke, Williams & Sorensen and Richard M. Fannan for Appellant.

Stroock & Stroock & Lavan, Daniel A. Rozansky, John L. Lucas and Crystal Y. Jonelis for Respondent.

_____

Cindy Yang appeals from the judgment for Fujifilm Corporation (Fuji). According to Yang, Fuji split its cause of action against her. She contends Fuji could have pursued its claims for fraudulent transfers against her in a prior federal court proceeding, and therefore the trial court should have applied res judicata and claim preclusion to bar those claims here. We find that the trial court correctly ruled that res judicata and claims preclusion did not apply. We therefore affirm.

## FACTS AND PROCEEDINGS

In 2005, respondent Fuji sued Yet "Jimmy" Chan and others, including appellant Cindy Yang -- collectively known as the Achiever Group -- in federal court for allegedly infringing Fuji's patent on single-use, disposable cameras. In 2007, Fuji and the Achiever Group settled the lawsuit. The settlement obligated the defendants other than appellant Yang to make six installment payments to Fuji totaling $3.25 million. Under the settlement, if the defendants missed any payments, appellant became liable to Fuji for property Chan may have transferred to her. The settlement stated: "CINDY YANG shall become jointly and severally liable with the members of the ACHIEVER GROUP for that portion of the entire remaining balance [of the settlement amount] which is equal to the value of any money or interest in property which is transferred directly or indirectly to her . . . by Jimmy Chan, without regard to whether the transfer is a fraudulent transfer . . . ."

In April 2007, Chan paid Fuji $750,000 as agreed, and in June 2007 he paid Fuji $1,000,000 more. Chan and the other defendants thereafter breached the settlement agreement by making no additional payments toward the $3.25 million settlement.

In January 2008, Fuji filed a federal lawsuit (the parties refer to it as "Lawsuit No. 2") for breach of the settlement agreement. Fuji named appellant a defendant. Lawsuit No. 2 alleged appellant had received up to $1.5 million in money and property from Chan. According to Fuji, the settlement agreement's above quoted provision triggering appellant's liability for missed installment payments entitled Fuji to recover from appellant the money and property that Chan had transferred to her.

2

The settlement agreement created a streamlined procedure allowing Fuji to file in federal court a motion in Lawsuit No. 2 to determine whether any transfer from Chan to appellant fell within the settlement agreement. In October 2008, Fuji filed such a motion targeting Chan's transfer to appellant of $700,000 in cash and his quitclaim to her of their house in Claremont, referred to as the Appalachian property. Appellant opposed Fuji's motion. She argued the settlement agreement did not apply to the transfers because she received them before the settlement agreement's "effective date." The federal court agreed, ruling that because Chan transferred the cash and quitclaim before the settlement agreement's effective date of March 1, 2007, Fuji could not recover the cash and property from appellant.[1]

In April 2010, Fuji filed its state court complaint that led to this appeal. Among other causes of action, Fuji alleged Chan and appellant committed common law fraudulent transfers and violated the Uniform Fraudulent Transfer Act (Civ. Code, § 3429 et seq.) by transferring Chan's assets to appellant for the purpose of frustrating Fuji's ability to enforce the settlement agreement.

Appellant moved for summary judgment. She argued res judicata and claims preclusion barred Fuji's claims for fraudulent transfer because Fuji could have pursued those claims in Lawsuit No. 2. Fuji also moved for summary adjudication on the res judicata/claims preclusion argument. The trial court granted Fuji's motion and denied appellant's motion. The court rejected appellant's contention that Fuji's "case of fraudulent transfer is simply an attempt to recover the same obligation [asserted under the breach of the settlement agreement in Lawsuit No. 2] under a different legal theory." The court concluded Fuji had different "primary rights" at stake in the federal breach of contract case and the state court fraudulent transfer case. The court explained, "This case in State court is about holding defendants accountable for allegedly frustrating [Fuji's] ability to collect on the obligation to pay money . . . ." "The primary right under the

---

[1]    The federal court granted Fuji relief on a minor point involving about $30,000, but that relief is not in dispute in this appeal.

3

fraudulent transfer cause of action is the right not to have the right to collection of that obligation frustrated or interfered with by the fraudulent transfer of assets that would otherwise be available to satisfy [the] contractual obligation" under the settlement agreement. The court characterized Fuji's theory of liability as distinguishing between two legal harms: The first harm was Fuji "didn't get paid money under the settlement agreement. And the [second] harm, based on the fraudulent transfer, is [Fuji isn't] able to collect the money that [Fuji is] owed because [Chan] fraudulently transferred assets and, therefore, [Fuji has] no place to go."[2]

The case was tried to a jury in February 2012. By special verdict, the jury answered the following questions as follows:

- "Did YET CHAN engage in a fraudulent transfer of any of his assets or his interest in assets to CINDY YANG?" – "Yes"

- "Did YET CHAN fraudulently transfer . . . $700,000 to CINDY YANG?" – "Yes"

- "Did YET CHAN fraudulently transfer his interest in the Appalachian Way Property to CINDY YANG?" – "Yes"

- "What was the value, if any, of the interest in the Appalachian Way Property which YET CHAN transferred to CINDY YANG?" – "$450,404.33"[3]

---

[2] Consistent with the trial court's analysis, the federal court had not analyzed Fuji's claim in Lawsuit No. 2 as a fraudulent transfer. The federal court instead focused on the settlement agreement's contractual language and the agreement's "Effective Date." Indeed, the federal court noted the settlement agreement's provision making appellant liable for Chan's transfers to her excused Fuji from having to prove a fraudulent transfer. According to the federal court, Fuji did not need to go through "the hoops" of proving Chan's intent in transferring his property; it was enough for Fuji to prove the transfers happened.

[3] The jury also found Chan fraudulently transferred his interest in property in Arcadia, but that property is not at issue in this appeal because the jury found Fuji's claim was time-barred.

4

The court entered judgment for Fuji as reflected in the jury's verdict. This appeal followed.

## DISCUSSION

1.  *Fuji Did Not Split Its Cause of Action*

According to appellant, the trial court should have applied the doctrines of res judicata and claim preclusion to bar Fuji from suing appellant for fraudulent transfers. Appellant asserts those doctrines obligated Fuji to raise in Lawsuit No. 2 every claim it had against appellant, or run the risk of unraised claims being barred in any later lawsuit. According to appellant, Fuji knew, or with due diligence could have known, about Chan's transfer of cash and his interest in the Appalachian property before Fuji filed its complaint in Lawsuit No. 2 for breach of the settlement agreement. By permitting Fuji to sue appellant for fraudulent transfers in a later proceeding, appellant contends the trial court erroneously allowed Fuji to split its cause of action. We disagree.

Claim preclusion and res judicata apply to a pending proceeding only when a prior adjudication resolved, or could have resolved, the same cause of action pending in the current proceeding. (*Brenelli Amedeo, S.P.A. v. Bakara Furniture, Inc.* (1994) 29 Cal.App.4th 1828, 1835 (*Brenelli*).) To determine whether the same cause of action is involved, California courts apply the "primary rights" theory. The "firmly settled rule in California for determining a cause of action is the primary rights theory. . . . ' "Under this theory, the underlying right sought to be enforced determines the cause of action. In determining the primary right, 'the significant factor is the harm suffered." ' " (*Id.* at pp. 1835-1836.) A "plaintiff's primary right is defined by *the legally protected interest* which is harmed by defendant's wrongful act, and is not necessarily coextensive with the *consequence* of that wrongful act." (Italics original.) (*Henderson v. Newport-Mesa Unified School Dist.* (2013) 214 Cal.App.4th 478, 499.) Thus, because breaching a contract inflicts harm on a legally protected interest different from tortious conduct that

5

renders uncollectable a judgment arising from the breach of contract, two different primary rights arise.

*Brenelli, supra,* is illustrative. In that decision, the plaintiff successfully sued the defendant-corporation for breach of contract and received a money judgment. (*Brenelli, supra*, 29 Cal.App.4th at p. 1833.) Before the plaintiff could execute on the judgment, the corporation filed for bankruptcy. Once in bankruptcy, it was established that the corporation had no assets with which to pay the judgment, allegedly because the corporation's shareholders had fraudulently conveyed the corporation's assets. (*Ibid.*) Consequently, the plaintiff sued the shareholders for various torts, including fraudulently transferring the corporation's assets, thereby seeking "to vindicate [the plaintiff's] right to be free from the shareholders' tortious conduct which unfairly deprived [him] of the value of [his] judgment." (*Id.* at p. 1837.) On review, the appellate court rejected the shareholders' argument that res judicata barred the fraudulent transfer lawsuit. *Brenelli* explained, "the right to have contractual obligations performed is distinct from the right to be free from tortious behavior preventing collection of a judgment." (*Ibid.*) "In [*Brenelli's*] first action the harm alleged was breach of contractual obligations. In [*Brenelli's* second action] the harm suffered by [the plaintiff] is [the shareholders'] alleged tortious conduct which has prevented satisfaction of the judgment [the plaintiff] won in the first action." (*Id.* at pp. 1837-1838; see also *Miller v. S&S Hay Co.* (E.D.Cal., June 24, 2013, No. 1:12-CV-01746-LJO-SMS) 2013 WL 3212494, *5 ["Where a plaintiff obtains a favorable final judgment against a defendant for breach of contract, is prevented from collecting that judgment by the defendant's allegedly wrongful acts, and brings another action against the defendant on the basis of the defendant's post-judgment conduct, California courts have found the two actions to involve different primary rights."].) *Brenelli* establishes that the trial court correctly permitted Fuji to pursue its claims for fraudulent transfer because those claims stated a cause of action different from the breach of contract cause of action in Lawsuit No. 2.

Appellant urges that we apply the "transaction" doctrine of federal law, instead of California's primary rights theory, to find Fuji wrongfully split its cause of action. We

6

need not linger on appellant's request, however, because she does not cite any California authority applying the transaction doctrine to define a cause of action. Instead of pertinent case law to support her position, her appellant's brief relies solely on an eight-and-a-half page block quotation from a 15-year-old law review article. But our Supreme Court as recently as three years ago affirmed that the primary rights theory applies in California. "California courts have 'consistently applied the "primary rights" theory. [Citation.] Under this theory, '[a] cause of action . . . arises out of an antecedent primary right and corresponding duty and the delict or breach of such primary right and duty by the person on whom the duty rests. "Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term." ' [Citation.]" (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797-798; *Federal Home Loan Bank of San Francisco v. Countrywide Financial* (2013) 214 Cal.App.4th 1520, 1530 [California applies "primary rights theory" to determine causes of action].) We are not free to depart from binding Supreme Court precedent, and we decline appellant's invitation to make new law by adopting the federal transaction doctrine. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

2. *Fuji's Supposed Duty to Amend Its Complaint*

Appellant contends that even if Fuji were excused from knowing about Chan's transfers to her when it filed Lawsuit No. 2, it learned about the transfers within a month of filing that lawsuit and therefore should have amended its complaint in that proceeding to add its claims for fraudulent transfer. The trial court rejected appellant's contention that Fuji had been obligated to amend its complaint in Lawsuit No. 2. While noting that it might have been more economical and efficient for Fuji to have pursued its fraudulent transfer cause of action in the federal proceeding, the trial court ruled that Fuji's failure to do so did not trigger res judicata and claim preclusion.

We see no error. Joinder of different causes of action is permissive. Fuji had a cause of action for breach of the settlement agreement and a separate cause of action for fraudulent transfer. "That the two causes of action might have been joined in one lawsuit

under our permissive joinder provisions [citation] does not prevent the plaintiff from bringing them in separate suits if he elects to do so." (*Sawyer v. First City Financial Corp.* (1981) 124 Cal.App.3d 390, 402-403; *Stanson v. Mott* (1976) 17 Cal.3d 206, 213 ["a plaintiff is not required to join separate causes of action arising out of the same transaction"]; see also *Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954 overruled on other grounds by *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 574, fn. 4 ["Under the 'primary rights' theory . . . the significant factor is the harm suffered; that the same facts are involved in both suits is not conclusive."].) Accordingly, Fuji was not obligated to pursue its fraudulent transfer claims by amending its federal complaint in Lawsuit No. 2 to litigate those claims in that venue.[4]

---

[4]    We also find it significant that the parties had stipulated to a streamlined procedure in Lawsuit No. 2 to determine whether a simple (non-fraudulent) transfer from Chan to appellant fell within the settlement agreement. Issues were limited, discovery was limited, and the resolution was to be by *motion* before the same federal judge who presided over Lawsuit 1, not by trial. And that is what happened in Lawsuit No. 2. In keeping with the streamlined procedure, Fuji filed a motion, and the federal court determined that the transfers in question did not violate the settlement agreement because they had occurred before the agreement was executed by the parties. It seems clear that the parties agreed that Lawsuit No. 2 would be limited to the settlement agreement and would not cover fraudulent transfer claims. Handwritten changes on the settlement agreement confirm this. The word "fraudulent" was stricken on three occasions and the parties expressly preserved "Fuji's right to use all available forums and procedures in an effort to collect the remaining balance from members of the ACHIEVER GROUP." Further litigation, it would appear, was expressly contemplated.

Having negotiated a streamlined proceeding which, by mutual agreement, left for another day claims such as fraudulent transfers, it seems inconsistent for appellant to now contend that matters intentionally left outside the streamlined proceeding are now barred because they were not raised within that proceeding. Beyond noting the inconsistency, however, we need not belabor the point because we conclude that the primary rights theory does not bar the present litigation.

3.     *No Double Recovery of Damages*

The jury found Chan fraudulently transferred to appellant his interest in the Appalachian property's value in the amount of $450,404.33[5] and $700,000 in cash. Appellant contends the jury's damage award included an unlawful double recovery because, according to appellant, she used the $700,000 in cash that she received from Chan to make the down payment on the Appalachian property.  (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 360-361 [double recovery of damages prohibited].)

After the jury reached its verdict, Fuji and appellant submitted competing proposed judgments to the trial court.  Appellant's proposed judgment purportedly corrected for the alleged double recovery.  Her proposed judgment awarded Fuji $800,404.33, consisting of $450,404.33 awarded by the jury for Chan's half of the Appalachian property, and $350,000 for his half of the $700,000 – the other $350,000 seemingly being appellant's share of the down payment on the Appalachian property which she apparently reasons the jury permitted her to keep because it awarded Fuji only half (Chan's half) of their equity in the property.  Fuji, on the other hand, submitted a proposed judgment awarding damages in the full amount awarded by the jury: $1,150,404.33 (= $450,404.33 + $700,000).  The trial court rejected appellant's proposed judgment and accepted Fuji's.

Appellant contends the court erred because "it is undisputed that the $700,000 which Cindy Yang received from [Chan] was used as part of the down payment for the Appalachian property."  The record does not prove double recovery.  No documents were introduced that tended to link the $700,000 to the down payment on the Appalachian property.  Appellant testified she may possibly have used the $700,000 as a down payment, but her testimony was inconclusive.  Under questioning by counsel about the source of funds for the down payment, she testified:  "Q.  You utilized the $700,000 that

_____

5     $450,404.33 is within one penny of one-half of Chan's and appellant's down payment for the Appalachian property.

9

Mr. Chan gave you towards that downpayment; is that right? A. I think so." The jury was free to disbelieve her equivocal answer. Moreover, the jury was not asked to make any special finding about the source of the down payment on the Appalachian property or appellant's disposition of the $700,000 that Chan gave her. Accordingly, appellant does not show that the trial court's judgment awarded a double recovery.

### 4.     *Quitclaim Transfer Date*

Chan executed his quitclaim of the Appalachian property in August 2005, before he and appellant were married. They recorded the quitclaim with the Los Angeles County Recorder in June 2006, after they married. Appellant asserts that Chan's quitclaim transferred nothing when he executed it because he and appellant were not married at the time, and thus he had no community interest to convey. Appellant thus contends that the jury erred in awarding Fuji damages for Chan's transfer of the property because the quitclaim transferred nothing of value to her. We see no error.

The trial court instructed the jury that the timing of Chan's transfer of his interest in the Appalachian property might matter in its deliberations. The court instructed that Fuji "claims that Mr. Chan fraudulently transferred his interest in the [Appalachian] property to Cindy Yang. . . . [¶] [Yang and Chan] claim that Chan had no interest in the Appalachian property. If Mr. Chan had no interest in the Appalachian property at the time of transfer, he cannot have made a fraudulent conveyance. [¶] It's up to you to decide whether Mr. Chan had an interest in the Appalachian property at the time of transfer."

Fuji based its statutory cause of action for fraudulent transfer on the Uniform Fraudulent Transfer Act (Civ. Code, § 3429 et seq.). In instructing the jury, the court relied on many of the Act's provisions. The court, for example, relied on the Act's definition of "transfer" in instructing the jury on that term. (Civ. Code, § 3439.01, subd. (i).) The court's instructions also relied on the Act's statutory factors to determine whether Chan transferred property to appellant with the intent to frustrate Fuji's efforts to recover its damages for breach of contract. And the court instructed the jury that a

10

transfer occurred under the Act when the transfer was "perfected," which the court instructed ordinarily meant recorded. (See Civ. Code, § 3439.06, subd. (a)(1) ["A transfer is made [] with respect to an asset that is real property . . . when the transfer is so far perfected . . . ."].)

The court instructed: " 'Transfer' means every method of parting with a debtor's property, or an interest in a debtor's property. A transfer may be direct or indirect, absolute or conditional, or voluntary or involuntary. . . . [¶] A transfer of an interest in real property to a purchaser is deemed made when the transfer is what is called perfected. Typically, a transfer is perfected when notice of the transfer has been recorded with the appropriate government recorder's office."

Appellant cites authority that the transfer of Chan's interest in the Appalachian property occurred when he signed the quitclaim. As a general matter, execution of a deed transferring an interest in property is effective upon the deed's execution and delivery and need not await its being publicly recorded. (See e.g. *Luna v. Brownell* (2010) 185 Cal.App.4th 668, 673.) But appellant cites no authority that a trial court errs by instructing a jury with the statutory provisions and definitions of a plaintiff's statutory cause of action. (*Brown v. Smith* (1997) 55 Cal.App.4th 767, 784 [generally speaking, court's jury instruction should follow the statutory language at issue unless the statute is confusing or couched in legal terms]; see also *Conservatorship of Gregory* (2000) 80 Cal.App.4th 514, 520 ["Instructions in the language of an applicable *statute* are properly given."].) Moreover, particular provisions of law ordinarily prevail over more general provisions, meaning, in this case, the particular provisions of the Act take precedence over the general doctrine of execution and delivery of a deed. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 478.) Accordingly, appellant does not show that the trial court erred by instructing the jury that the jury could find that Chan's *fraudulent transfer*, as defined by the specific provisions of the Uniform Fraudulent Transfer Act, took place upon the recording of the quitclaim – at which point he did have an interest in the property upon which the jury could rest its damage award to Fuji.

11

## DISPOSITION

The judgment is affirmed.  Respondent Fujifilm Corporation to recover its costs on appeal.


                                                    RUBIN, J.

WE CONCUR:



        BIGELOW, P. J.



        GRIMES, J.

12